## MARIE H. MANLEY AND OTHERS v. HARVEY LUMBER COMPANY AND ANOTHER.[1]

November 16, 1928.

No. 26,912.

**When conclusion of industrial commission should be affirmed and when reversed.**

1. Where the industrial commission as a trier of fact has a choice between conflicting evidence or diverse inferences may be drawn from the evidence, its conclusion should stand. If the conclusions reached by the commission are manifestly contrary to the evidence, they cannot stand. The commission must accept as true the positive, unimpeached testimony of credible witnesses unless the same is inherently improbable or rendered so by facts and circumstances diclosed at the hearing.

**Finding that death was accidental determines that it was not suicidal.**

2. As between accident and suicide, the law supposes accident until the contrary is shown. In this case there was no evidence indicating suicide, and the commission found that death was accidental. This determination is final.

Evidence, 22 C. J. § 35 p. 95 n. 79.

Workmen's Compensation Acts—C. J. § 63 p. 73 n. 76; § 127 p. 122 n. 40.

---

See note in L. R. A. 1916A, 178, 266; L. R. A. 1917D, 186; 28 R. C. L. 828, et seq; 3 R. C. L. Supp. 1600; 4 R. C. L. Supp. 1872; 5 R. C. L. Supp. 1581; 6 R. C. L. Supp. 1766; 7 R. C. L. Supp. 1011.

Certiorari upon the relation of Marie H. Manley, on behalf of herself and six minor children, to review an order of the industrial commission denying compensation for the death of her husband, Adolph O. Manley. Reversed.

*O. J. Larson,* for relators.

*Denegre, McDermott, Stearns, Stone & Mackey,* for respondent Harvey Lumber Company and Liberty Mutual Insurance Company, its insurer.

[1]Reported in 221 N. W. 913.

HILTON, J.

Certiorari to review an order of the industrial commission denying compensation.

All the evidence in this case was given on behalf of the relator and is not in dispute. Adolph O. Manley died on March 30, 1927, as the result of monoxide gas poisoning, leaving surviving him relator and their six minor children ranging from 13 years to 10 months in age. For some time prior to and at the time of his death he was in the employ of the Harvey Lumber Company, a Minnesota corporation located at Duluth, as general manager of its yards and business at Carlton, Minnesota. In addition to selling lumber and other supplies of the company, it was his duty to collect the bills and claims which the company held against its customers. In the conduct of his employer's business and pursuant to an arrangement made, Manley used his own car, the company paying for the necessary gasolene, oil and repairs therefor. The collection work required the use of the automobile in the country near Carlton. In the performance of his work he had no definite business hours but usually left for his place of business at about eight o'clock in the morning. The company frequently insisted upon the collections being made and gave such instructions just a few days prior to Manley's death.

On the morning of March 30, 1927, Manley was requested by his wife to secure a furnace pipe and also to have a doctor come out to the house and attend an ailing child. At about eight o'clock Manley went from his home to the business part of Carlton, secured the furnace pipe and returned home about nine o'clock. He did not use his car in making this trip. While on this errand he had a conversation with the operator of a gas filling station at which he customarily secured gasolene and oil for the car. Manley then told this man that "he was going home and get his car and come up to the service station and get some gas and oil, that he was going out in the country collecting bills for the Harvey Lumber Company." He also told another business man at about the same time

that he was going into the country. After reaching home he stated that he was going to work on collections that day. He placed the furnace pipe in the basement, visited his sick child, put in his pocket a number of the accounts of the lumber company which were to be collected, and then went to his garage on the home lot. He was not afterwards seen alive.

About two hours later a neighbor saw smoke coming out of the garage. A call was put in for the fire department. A sister of relator went to the garage, opened the door and found Manley lying on his back on the floor about two feet behind the automobile with his head on an inflated spare tire. He was dead. The engine of the car was running. Four fully inflated tires were on the wheels of the car. The spare tire on which his head was resting was on a rim. A pair of pliers was in or near his hand, and close by was a screw driver and a broken automobile spring, the kind commonly used in changing tires. In his pockets were found the bills and claims which were for collection. There was no automobile jack in sight. The evidence does not disclose whether or not there was one in the car. A jack would not have been necessary for use in placing the spare tire on the carrier usually found on an automobile. The tools above described would be suitable for that purpose.

The referee found that the death was accidental and did not arise out of or in the course of Manley's employment and denied compensation. The industrial commission approved and adopted these findings and the decision of the referee. Neither the referee nor the commission made any statement as to the reasons for reaching that conclusion. We are of the opinion that the uncontradicted, positive and unimpeached testimony in this case requires a reversal.

1. This court has uniformly held that where the commission as the trier of fact has a choice between conflicting evidence or diverse inferences may be drawn from the evidence, its conclusions should stand. Smith v. Mason Brothers Co. 174 Minn. 94, 218 N. W. 243. If however the conclusions reached by the commission are manifestly and clearly contrary to the evidence, they cannot stand. Campbell v. Nelson, 175 Minn. 51, 220 N. W. 401.

The commission, upon which devolves the duty to determine facts from competent evidence, must accept as true the positive, unimpeached testimony of credible witnesses unless the same is inherently improbable or rendered so by facts and circumstances disclosed at the hearing. For a complete list of Minnesota cases on the proposition see O'Leary v. Wangensteen, 175 Minn. 368, 221 N. W. 430. This well settled rule is controlling here. From the evidence, it is certain that Manley went to the garage for the purpose of starting out with his car on a collection trip into the country on his employer's business. He had started the motor for this purpose. The placing of a spare tire on the car was a proper and necessary precaution for the work intended. The tools found were those usually used for that purpose. The accident arose out of and in the course of his employment.

2. The suggestion made in respondents' brief, that it might have been a case of suicide, finds no support in the record. Furthermore, the presumption is to the contrary. State ex rel. Oliver I. Min. Co. v. District Court, 138 Minn. 138, 164 N. W. 582, and cases cited. Then too the referee and commission found that the death was accidental. Under the facts in this case this determination is final. Hawkins v. Kronick C. & L. Co. 157 Minn. 33, 195 N. W. 766.

The order is reversed with directions to award compensation in accordance with the statute, and with an allowance to relator of $100 as attorney's fees.

STONE, J. took no part.