# MRS. M. B. SOULE v. RED WING ADVERTISING COMPANY AND ANOTHER.[1]

April 26, 1935.

No. 30,317.

*Oppenheimer, Dickson, Hodgson, Brown & Donnelly,* for relators.
*Lystad & Mantor,* for respondent.

LORING, JUSTICE.

*Certiorari* to review a decision of the industrial commission whereby the dependent widow of M. B. Soule was awarded compensation for the death of her husband.

January 9, 1933, M. B. Soule was found dead in his garage at Northfield, Minnesota. The doors of the garage were closed, and the motor of his automobile was running. Death was attributed to carbon monoxide poisoning.

[1] Reported in 260 N. W. 360.

In October, 1932, Soule had made an arrangement with the Red Wing Advertising Company to solicit advertising accounts for that concern. He was assigned territory in southern Minnesota and was to receive compensation for his efforts on a strictly commission basis on sales actually made. In traveling from place to place Soule used his own automobile, but his agreement with the advertising company made no mention of what facilities were to be used for his transportation. The advertising company made no effort to control his comings and goings. His trips through his territory, the manner of solicitation, and his means of travel from place to place were of his own choosing. The territory through which he traveled was accessible by bus and train. He chose, however, to use his own automobile although no agreement was made for him to be reimbursed for expenses incurred by reason of expenditures for the operation thereof. Sunday, January 8, 1933, the day before his death, Soule made the statement to friends that on the following day he was going to make a trip into his territory for the advertising company. Monday morning, January 9, 1933, Mr. Soule arose at about six o'clock, went on an errand, and returned for breakfast. After breakfast he went to his garage for the purpose of repairing his car and at about ten o'clock returned to the house to cut some venison for dinner. Soon afterward he again returned to his garage and about noon was found dead under the circumstances above described.

The widow contends that she is entitled to compensation because Soule met his death in the course of his employment. The commission, relying on Manley v. Harvey Lbr. Co. 175 Minn. 489, 221 N. W. 913, and Grina v. Stenerson Brothers Lbr. Co. 189 Minn. 149, 248 N. W. 732, awarded compensation.

The cause of death in the Grina and Manley cases was the same as here, but the cases are clearly distinguishable on the question as to whether the death occurred in the course of employment. Both Manley and Grina were salaried employes of their respective employers. Manley had a car of his own which he used for the purpose of making collections and received reimbursement for money spent for gas and oil while on trips in connection with his duties as

general manager of his employer. Grina, although he often used a car belonging to his employer, sometimes used his own car for trips from one branch office to another and was repaid for any expenditures made for gasolené and oil while on those trips. In the Manley and Grina cases it was at the express instance of the employer that the men used their cars for business purposes. Both were working under the direct supervision of their employers. In each case the deceased had gone to the garage for the purpose of embarking on an immediate journey to another town and was later found dead of carbon monoxide poisoning, each evidently having been overcome while effecting minor repairs to his automobile in furtherance of the journey.

Here we have an entirely different fact situation. Soule did not use the car at the request or direction of his employer. No arrangement was made for expenses connected with running it, nor were any arrangements entered into between Soule and the advertising company with regard to transportation. Soule's use of his car was purely for his own convenience. He could use it or not as he chose.

Both Manley and Grina were embarking immediately upon their masters' work. Grina was to pick up a passenger at an hour shortly after he left his home for his garage. Manley had put collection slips into his pockets which he intended to work on that morning. It is significant that Soule was dressed in rubber boots and a mackinaw coat. His traveling kit was in the house, as were the grips of the advertising company that he used in his work. His wife apparently expected him to partake of the noonday meal and had prepared that meal to include him. It is quite evident that Soule did not intend leaving for his territory until later in the day.

Under these circumstances, we do not think that Soule's death arose out of or in the course of his employment. He had not, as had Manley and Grina, "embarked for the day upon his employer's business." His case is controlled by the rule laid down in Jensvold v. Kunz Oil Co. 190 Minn. 41, 43, 250 N. W. 815.

The advertising company had no control over Soule or his movements. Repairs to his car which he was making at the time of

his death were merely for the purpose of putting it in condition for his own personal convenience. It could hardly be said that he was in the course of his employment any more than if he had been injured while engaged in mending the shoes which he intended to wear on the trip.

We are therefore of the opinion that Soule's death did not arise out of and in the course of his employment and that the decision of the industrial commission must be reversed.