199 P.2d 625
### KINGSFORD v. BENNION.
#### No. 7453.

Supreme Court of Idaho.
Nov. 9, 1948.

Alvin Denman, of Idaho Falls, for appellant.

No appearance for respondent.

HOLDEN, Justice.

S. H. Bennion was engaged in the business of selling gasoline, oil and grease at several different oil and service stations, under the firm name and style of Blue Bell Company. On or about the first day of March, 1943, appellant Bennion employed respondent to manage and operate a station located in Pocatello at a guaranteed monthly salary of $120.00, together with certain commissions on white gasoline, regular gasoline, Ethyl gasoline, oil and grease and on grease jobs, commissions earned to be deducted from the guaranteed monthly wage. Respondent was so employed from on or about the first day of March, 1943, until on or about February 4, 1947, at which time appellant discharged respondent without paying him the amount respondent claimed appellant owed for services rendered appellant.

Following his discharge and on the 15th day of May, 1947, respondent commenced this action against appellant to recover the sum of $278.00, salary for services alleged to have been rendered and also commissions. claimed to be due, including $120.00, covering a thirty-day period from and after his. discharge, under chapter 6, sec. 6, Title 44,. I.C.A., as well as attorney fees sought to be recovered under the provisions of said chapter.

September 16, 1947, appellant answered respondent's complaint and filed a cross-complaint against respondent. In his answer to respondent's complaint appellant admitted respondent's employment at a guaranteed salary of $120.00 per month, together with certain commissions, as alleged by respondent to be first deducted, if earned. By his cross-complaint appellant alleged in substance: That respondent was negligent in the management and operation of the service station; that he was instructed not to permit charge accounts without authorization; that respondent permitted certain charge accounts in certain specified amounts totaling $397.30 in violation of instructions; that respondent failed to account for 6,198 gallons of gasoline of the reasonable value of $1363.56; and that appellant had been unable to collect the charge accounts permitted without authorization. Respondent answered appellant's cross-complaint and, in substance, denied he negligently managed the station or permitted credits in violation of instructions, and alleged: That he submitted all applications for credit to appellant for approval in accordance with appellant's oral instructions and that credits were allowed in accordance with instructions received from appellant.

The cause was tried January 14 and 15, 1948, upon respondent's complaint and appellant's answer thereto and upon appellant's cross-complaint and respondent's answer to such cross-complaint. January 15th the jury returned a verdict in favor of re-spondent and against appellant for $398.00. Whereupon judgment was accordingly entered on such verdict against appellant for that amount. January 26, 1948, appellant moved for a new trial. March 5, 1948, the motion was denied. April 12, 1948, notice of appeal was given (filed April 17th) by appellant from said judgment and order denying a new trial.

On this appeal there is no dispute that respondent was to be paid a salary of $120.00 per month and, in addition, certain commissions on the sale of gasoline, oil and grease, and on grease jobs, and that the salary was to be first deducted from earned commissions. And there is no dispute that appellant discharged respondent without paying him any sum or amount. Therefore, those questions need not be considered.

By his cross-action against respondent, appellant sought to recover from respondent for negligently "permitting 6,198 gallons of gasoline of the reasonable value of $1,363.56 to be withdrawn from" the service station managed by respondent, "without [respondent's] receiving payment therefor," and also for permitting certain "charge accounts to accrue in violation of the defendant's [appellant's] instructions and without authorization from the defendant". On the issue as to whether respondent negligently permitted 6,198 gallons of gasoline, or any gasoline, to be withdrawn without receiving payment, there is evidence that one of the pumps "pumped over almost two-tenths of a gallon as near as we [respondent and state

weights and measures representative] could judge it"; that the trucks delivering gasoline leaked; that trucks failed to complete the "dump" into station tanks because the tanks could not take it, and that the remaining gasoline was taken elsewhere; that appellant never complained about gasoline shortages; that appellant never asked respondent to pay for alleged gasoline shortages and never charged alleged gasoline shortages to respondent.

Concerning the issue involving the allowance of credits by respondent in violation of alleged instructions, there is evidence it was the practice to allow credits before authorization and then immediately write in for authorization; that appellant authorized the continuance of credits regardless of instructions; that appellant never deducted any alleged unauthorized accounts from respondent's salary; that in a note from appellant to respondent appellant instructed respondent to discontinue credits; that thereafter respondent made a special trip to Idaho Falls to talk the matter over with appellant; that respondent told appellant "it looked like to me [respondent] the credit was coming along nicely, and that it would cut a lot of our customers out without that credit, and that I [respondent] felt we should continue the credit as we had been doing. So he [appellant] never told me we couldn't continue it. He said well, I guess that would be all right so credit was continued"; that appellant never told respondent he "would have to stand those accounts if they weren't paid".

On the trial appellant injected new issues into his cross-action against respondent involving certain checks, "accepted" by respondent, amounting, it was claimed, to several thousand dollars, which checks, however, it was later shown were paid by respondent, and also concerning certain credits granted by respondent to persons other than those specifically alleged in appellant's cross-complaint, for which appellant sought to hold respondent liable. The record discloses both parties let the bars down and that all the facts and circumstances material to the issues formed by the pleadings, including the new issues brought into the case, went to the jury. Hence, no useful purpose would be served by reversing the judgment and granting a new trial of the cause on its merits. Bloxham v. Robinson, 67 Idaho 369, 181 P.2d 189, 191; Pilkington v. Belson, 66 Idaho 724, 730, 168 P.2d 815; Lingenfelter v. Eby, 68 Idaho 134, 190 P.2d 130, 132, 133.

Furthermore, it is rather difficult to understand why appellant did not before respondent brought his action, at some time during the period respondent was employed by appellant, charge the alleged gasoline shortages to respondent, as well as and including the amounts involved in the credit accounts permitted by respondent, if, in truth and in fact, appellant himself, prior to the commencement of the action by re-

spondent to recover his salary, actually understood respondent was justly chargeable therewith. And, too, this may well have caused the jury some difficulty.

But appellant insists the trial court erred in refusing to give the jury the following requested instruction:

"The burden is on the plaintiff in this action to satisfactorily account for all gasoline committed to his care by the defendant."

That instruction does not cover or apply to the issue presented by appellant's cross-complaint or the evidence adduced thereon either by appellant or respondent, involving the delivery of 6198 gallons of gasoline to respondent. As above pointed out, in his cross-complaint appellant sought to recover from respondent for *negligently* "permitting 6,198 gallons of gasoline of the reasonable value of $1,363.56 to be withdrawn from" the service station managed by respondent, "without [respondent's] receiving payment therefor". In other words, the ground upon which appellant sought to recover, according to the allegations of his cross-complaint, was the alleged *negligence* of respondent in selling 6,198 gallons of gasoline and not collecting the cash therefor at the time of the sale. It was on that basis appellant sought affirmative relief against respondent.

"The rule that the party who is seeking affirmative relief has the burden of proof is one which necessarily underlies all our procedure".

Southeast Securities Co. v. Christensen, 66 Idaho 233, 239, 158 P.2d 315; Woodruff v. Butte & Market Lake Canal Co., 64 Idaho 735, 740, 137 P.2d 325; Restatement of the Law of Agency, 2 Am. Law Institute, sec. 379, pp. 838, 839, 840. Hence, the requested instruction was properly refused. And appellant insists, and we think correctly, the social security tax and the withholding tax totaling $26.19 should be deducted from the judgment, in that respondent testified it was the custom to deduct those taxes and, further, that there was no question about the right of appellant to do so.

That brings us to the question as to whether respondent was entitled to recover attorney fees (the trial court allowed $175), and that in turn presents the question as to whether respondent made a demand as required by sec. 44-605, I.C.A. That section provides:

[Sec. 44-605] "Whenever a mechanic, artisan, miner, laborer, servant or employee shall have cause to bring suit for wages earned and due according to the terms of his employment, and shall establish, by decision of the court or verdict of the jury, that the amount for which he has brought suit is justly due, and that a demand has been made, in writing, at least five days before suit was brought, for a sum not to exceed the amount so found due, it shall be the duty of the court before which the case shall be tried to allow to the plaintiff a reasonable attorney's fee, in addition to the

amount found due for wages, to be taxed as costs of suit."

This court construed that statute in Cosner v. United Mines Company, 33 Idaho 801, 198 P. 472. We quote from headnote two which appears to fairly state the holding of the court:

"Where in a claim for wages no demand is made in writing by plaintiff in accordance with the provisions of C.S. § 7380 [now sec. 44-605, I.C.A.], it is error to allow attorney's fees to plaintiff."

See, also, Goodell v. Pope-Shenon Mining Co., 36 Idaho 427, 212 P. 342; Lus v. Pecararo, 41 Idaho 425, 427, 238 P. 1021. Furthermore, it seems quite clear from the provisions of the statute the legislature intended in an action to recover wages that the claimant must, at least five days before action is brought, make written demand for the amount claimed to be due.

In the case at bar it is clear no written demand was made for the payment of any amount before respondent brought his action. Therefore, respondent could not recover attorney fees.

We conclude the cause should be, and it is, hereby remanded, with directions to the trial court to enter judgment on the verdict for respondent for the sum of $251.81 ($278.00 less $26.19), nunc pro tunc, and, further, to enter an order denying respondent's claim for attorney fees. As thus modified the judgment is affirmed. No costs awarded.

GIVENS, C. J., HYATT, J., and BAKER, D. J., concur.

MILLER, J., sat at the hearing but did not participate in the decision.