281 P.2d 962

Annie Pauline PINSON, for herself and on behalf of Jimmy Gordon Pinson and Charles Robert Pinson, Minors, Petitioner,

v.

The INDUSTRIAL COMMISSION OF ARIZONA and R. F. Hill, A. R. Kleindienst and F. A. Nathan, as Members thereof, and Joe Tooley Produce Company, Inc., a corporation, Respondents.

No. 5996.

Supreme Court of Arizona.

April 9, 1955.

Harold A. Beelar, Globe, and Jack C. Cavness, Phoenix, for petitioner.

John R. Franks, Phoenix, Atty. for respondent The Industrial Commission of Arizona, Donald J. Morgan, Robert K. Park, Phoenix, and John F. Mills, Prescott, of counsel.

UDALL, Justice.

This is a review by certiorari of an award entered by respondent Industrial Commission of Arizona denying widow's and dependents' claim for death benefits.

The facts surrounding and leading up to the death of William Gordon Pinson, deceased (the husband and father of petitioners) fairly stated are as follows: Pinson, aged 39 years at the time of his death, was a resident of Winkelman, Arizona, and for some nine years prior thereto had been self-employed as the owner of an ice delivery business in the Hayden-Winkelman-Tiger-Mammoth area. He had an ice-storage house next to his home in Winkelman and the bulk of deliveries of ice were made from there by his employee who ran an ice route serving customers in that area. In addition to, and in conjunction with his ice business, he had been for approximately four years preceding his death, an employee of respondent employer, Joe Tooley Produce Company, Inc., of Tucson, in the same general area as that covered by his ice business. No question is raised as to the employee status of Pinson and it is conceded that this employer knew that he was engaged in the ice business and consented to his participation in that business.

Pinson's duties as an employee of the Produce Company consisted of solicitation of produce orders, delivery of same and the collection of money therefor. The two occupations were harmonious in that Pinson purchased the ice required for his inde-

pendent business in Tucson and the produce orders delivered by him were also picked up at his employer's establishment in Tucson. The employer paid him a flat commission of ten percent of the gross produce sales, which was seven to seven and one-half percent more that the usual commission allowed to others, this for the reason that Pinson used his own truck in making deliveries in addition to soliciting produce orders and collecting for them.

In the main, Pinson made deliveries of produce on Monday, Wednesday and Friday of each week, with Friday as the biggest delivery day. By reason of his dual pursuits he made a trip to Tucson nearly every day, and as a general rule he transported larger quantities of ice from Tucson on Tuesday, Thursday and Saturday, and lesser amounts, because of increased produce business, on the other three week days. The record is replete with evidence that decedent, an experienced produce man, at all times endeavored to meet the needs of his customers and he was continually soliciting produce orders irrespective of the hour or day of the week though the major soliciting occurred as stated on Tuesday, Thursday and Saturday. Pinson did not operate on any time schedule and it was his practice to solicit produce orders late in the evening. These orders were then phoned in from his home in Winkelman to his employer between 6:00 and 7:00 a. m. on the day the order was to be picked up. Part of his work for the employer was done at his home. Orders were written up there and customers phoned his home in the evening to place orders for the next day; in turn, as stated, from there orders were relayed to his employer in Tucson.

The customers served by Pinson were in the San Pedro River Valley; in the main they lived in the towns of Tiger, Mammoth, Winkelman and Hayden. The latter three towns are located on State Highway 77 which is the only highway serving those communities. Tiger is a short distance off this highway, southwest of Mammoth, and Hayden is some two miles beyond Winkelman.

Mr. Pinson met his death by the overturning of his truck on the main highway in a one-car accident approximately four miles south of Winkelman, on Thursday, November 5, 1953, at about 8 p. m. There were no eye-witnesses to the accident. His movements that day, insofar as they can be pieced together, are as follows: He left home early that morning on his daily trip to Tucson, driving a 1½-ton Chevrolet panel truck. His first recorded stop was at the Davis Mammoth Mercantile Company where he picked up a produce order. He then proceeded on to Tucson where he evidently spent the major portion of the day. He there purchased and loaded in his truck 6600 pounds of ice and picked up produce to fill the order obtained that morning in Mammoth. The only record of produce delivered to Pinson by his employer on that day was the Davis order. The hour he left

Tucson is not shown but it is known that he arrived back in Mammoth sometime between 5:00 and 6:00 p. m., where he delivered the Davis shipment and collected the sum of $26.03. This same establishment gave him a box of pears that were bad, which according to its custom Tooley's would replace, and in addition they gave to Pinson a produce order for delivery the following day. There is some conflict as to whether Pinson also delivered that evening a produce order to Barbara's Cafe in Mammoth. So far as is definitely known there were no other stops made by decedent between Mammoth and the spot, 16 miles north, where he met his death though there was some hearsay testimony that he had stopped enroute at a gas station for truck repairs. However, it is known that according to custom he would in all probability have contacted at least two customers for orders upon returning home that evening, i. e., the manager at Quarelli's Store in Winkelman and the Hayden Cafe in Hayden.

As an independent merchant Pinson was self-employed and was not covered under the terms of the Workmen's Compensation Act, A.C.A.1939, § 56–901 et seq. His employer Joe Tooley Produce Company was properly covered under the Act with the State Fund as the insurer. Admittedly the liability of the insured employer extended only to Pinson's pursuits in the interest of the Produce Company for in nowise would such employer be liable for Pinson's independent activities in the ice business.

Based upon the reports submitted to it, the Commission by applying the so-called "time of the accident" rule found in effect that Pinson at the time of his death was pursuing the interests of his independent ice business and that he was not then and there engaged in any pursuit for the Joe Tooley Produce Company. An award was therefore entered denying widow's and dependants' claim for death benefits. Motion for rehearing was filed and granted. Two hearings were thereafter held, the one at Hayden and the other at Tucson, where the applicant was accorded an opportunity to present her evidence. Thereafter, a decision upon rehearing was rendered by which the Commission in all respects reaffirmed its previous award, and this petition for review followed.

The assignments of error in substance are that the findings made by the Commission to the effect that decedent did not meet his death by an accident arising either out of or in the course of his employment by the Tooley Produce Company are contrary to the law and the evidence.

In support of these assignments of error petitioner invokes the "going and coming" rule, as recognized by this court in the cases of Harris v. Industrial Commission, 72 Ariz. 197, 232 P.2d 846, and Martin v. Industrial Commission, 73 Ariz. 401, 242 P.2d 286:

" * * * where the work is of such a nature that it creates the necessity of travel on the part of the em-

ployee, or where the employer compensates the employee for travel to and from work, the employee is protected by the Workmen's Compensation Act * * *." [72 Ariz. 197, 232 P.2d 847.]

Petitioner further relies upon the "dominant purpose" test which applies to a situation where the employee's travel is not only for his employer but to meet some private purpose of his own. The leading case on this point is Marks' Dependents v. Gray, 251 N.Y. 90, 167 N.E. 181. There decedent, a plumber's helper, informed his employer he was journeying to Shortsville, a nearby town, at the end of the working day, to pick up his wife who was visiting relatives. The employer asked him to perform a minor repair job while at Shortsville. The New York Court of Appeals, speaking through Mr. Justice Cardozo, laid down the "dominant purpose" test relied upon by petitioner but applying this test held the travel was personal since the work performed was so trivial that a special trip would not have been made. Petitioner contends that if this test be applied in the instant case the travel, being of such nature that it had to be performed by someone, was not personal but in the course of decedent's employment.

Respondent Commission, on the other hand, contends the instant case is governed by rules relating to a dual employment situation, i. e., where an employee is hired by more than one employer, and it urges

the "time of the accident" rule applies. To support the denial of compensation it cites cases such as Suverkrubbe v. Village of Ft. Calhoun, 127 Neb. 472, 256 N.W. 47. In that case an employee was a village marshal and was also employed by a power company as a watchman. He was shot—off the company's premises—when attempting to arrest a robber. The court looked to the precise activity of the employee at the time of the accident and concluded the power company was free from liability, inasmuch as the injuries did not arise out of and in the course of his employment with the power company. Respondent also cites Hight v. Industrial Commission, 44 Ariz. 129, 34 P.2d 404. There the employee was engaged by one employer to take care of cattle—an agricultural pursuit not covered by the Act—but also was required to operate a gasoline engine for the pumping of water—this activity being within the Act. The worker was injured while lassoing an animal. This court applied the "time of the accident" rule, and held since the activity at that moment was agricultural, the worker was not entitled to compensation.

We believe the Commission is correct in urging that the facts in the instant case reveal a "dual employment" situation, for although decedent's activities in the ice business were those of a self-employer, and not governed by the mandatory provisions of the Act, his regular activities were clearly of such a nature as to constitute an

employment, as opposed to some casual activity for his own private benefit. This court has had occasion to pass upon the problem presented by a dual employment situation. In the case of Butler v. Industrial Commission, 50 Ariz. 516, 73 P.2d 703, 706, the decedent was employed as a grounds keeper and watchman by a corporation operating an athletic park and he was also employed by another corporation to assist at a nearby dance hall when dances were in progress. When engaged in this latter employment his duties as grounds keeper required him to go to the nearby athletic park from time to time to change the water or perform other similar tasks. This fact was known and assented to by both employers. Decedent was killed while travelling between the two places of employment. We held that:

"* * * where * * * a man is engaged in the service of two employers, with duties at two different places, if those duties are with the knowledge and approval of both employers, to be performed in such a manner that they necessarily require a repeated passage of the employee from one place of business to the other in order that he may properly perform his duties for both * * * during such travel back and forth he is in the service of both employers * * *."

While the Commission recognizes that Pinson may have been at times engaged in the service of both employers, they contend the facts warrant a finding that at the time of the accident his only pursuit was that of an independent ice man, and hence his survivors are not entitled to compensation.

The Suverkrubbe case, supra, and others cited by respondent, support the position that the pursuit of the workman at the time of the injury controls. However, in those cases the activity in which the employee sustained injury was—like that of the village marshal—clearly severable from the activity for his other employer. Larson, in his work on Workmen's Compensation Law, ably discusses the problem arising when a workman serves more than one employer. The following statement appears in Vol. 1, section 48.50:

"When there is a true dual employment, and the particular industry in which the injury occurs can be clearly identified, it is only logical, under the compensation theory, that that industry should bear the compensation cost * * * a delivery man engaged to deliver packages for two employers was held to be in the exclusive service of one, when, having completed deliveries for the other, he was devoting himself entirely to the interests of the first employer by delivering his packages. But, obviously, a deliveryman going along the street with the packages of both employers would have to be held a joint employee. *The dual employment rule should be resorted to only*

*when the complete identification of the employee's activities at the time of injury with a single employer is beyond dispute.* There should be no weighing of relative value of particular services to different employers, or quibbling about borderline activities * * *." (Emphasis supplied.)

The question in the instant case is thus resolved to this: Were Pinson's activities, at the time of the accident which caused his death, so completely identifiable with his ice business as to be beyond dispute? Unless this question be answered in the affirmative, the award must be set aside. The Commission contends that decedent's journey from Mammoth to the point where he met his death was unrelated to his employment with the Produce Company, he having completed all produce deliveries that were required for that day. We cannot agree with this contention, as we believe the "going and coming" rule well applies to the instant situation.

It seems apparent that Pinson's employment required him to use the highways on his employer's business. Therefore, the fact that he was not then exclusively engaged in delivering produce for his employer is not controlling, because the solicitation of orders and collection of money was as much a part of Pinson's duties as the delivery. When the accident occurred Pinson had in his possession money belonging to his employer and orders which were to be filled the next day. Obviously

then the employer derived advantages from Pinson's overall activities on the day in question. Furthermore, the evidence definitely shows that Pinson's work for the day in question was not completed. Had he lived, it appears other soliciting calls would have been made that night both at Winkelman and Hayden. Certainly, under these circumstances it cannot be said that the exclusive responsibility for his travel rested upon the ice business. The two activities were inextricably entwined. We believe the travel required to get him back to his home at Winkelman, under the "going and coming" rule, was in line of his duty to his employer. This being so, his fatal injury was caused by an accident arising out of and in the course of his employment and is compensable. We are of the opinion the evidence, as a matter of law, does not sustain the Commission's award.

Finally the Commission argues that allowing compensation in the instant case extends to such an employee full coverage even though travel is also required by his private employment and the State Fund as insurer therefore bears the full burden for injuries arising from such travel. This contention is without merit for the liability of the insurer must be computed solely on the wages paid by said employer; that is, on that portion of the ten percent commission which is found to be attributable to wages paid decedent as distinguished from costs of truck operation. Clearly Pinson's earnings from his ice business could not be

taken into consideration in making an award. As stated in Butler v. Industrial Commission, supra, where

"* * * he [the employee] is in the service of both employers, and he be injured therein, both are liable to him for compensation in proportion to the remuneration received from each one. * * *"

We hold, therefore, that the Commission erred in denying "death benefits" to the wife and minor children.

Award set aside.

Concurring:

LA PRADE, C. J., and WINDES, PHELPS and STRUCKMEYER, JJ., concur.