754 P.2d 434

BASIN LAND IRRIGATION COMPANY,
Claimant–Respondent,

v.

HAT BUTTE CANAL COMPANY, Employer; Insurance Company of North America, Surety, Defendants–Respondents,

Jerry B. Brinkley, Employee of Hat Butte Canal Company, Defendant–Appellant.

Nos. 16270, 16331.

Supreme Court of Idaho.

March 29, 1988.

Rehearing Denied May 24, 1988.

**122**

Goicoechea Law Office, Lynn M. Luker (argued), Boise, for defendant-appellant.

Joel E. Tingey, Boise, for claimant-respondent, Basin Land Irr. Co.

HUNTLEY, Justice.

Jerry and Joanne Brinkley bring consolidated appeals from (1) an order of the Industrial Commission that Jerry Brinkley was injured while acting within the scope of his employment for Basin Land Irrigation Company, and (2) from a summary judgment order of the district court which deferred to the Industrial Commission's determination as a basis for dismissing plaintiff's complaint against Basin Land Irrigation Company (Basin Land).

Brinkley was employed by both Basin Land and Hat Butte Canal Company (Hat Butte). The two companies had an arrangement whereby Basin Land paid 35% and Hat Butte paid 65% of all of Brinkley's expenses, workers' compensation premiums and salary as a common ditch rider for both companies.

On September 1, 1984, Harold Breach (president of Basin Land), operating in the scope of his employment, was in an automobile accident with Brinkley which caused Brinkley's injury. Brinkley testified that on the morning of the accident he left his home and was headed west on Bigfoot Road to work at the relift station that was part of the Hat Butte Canal system, which station had nothing to do with the Basin Land system. Brinkley further testified that after he finished checking the relift station that he was going to check a Hat Butte pond further north and then he was planning to return home.

Harold Breach's son, Mike, testified that on August 31, he telephoned Jerry Brinkley's home to order water to be applied for Basin Land on September 1. Mike Breach testified that he talked with Brinkley's daughter but not with Brinkley himself. Brinkley and members of his family testified that no communication of any sort was received from Mike Breach regarding any water orders for Basin Land for September 1. The Commission, unable to determine from the evidence that Brinkley was in fact specifically engaged in services for Basin Land at the time of the accident, nevertheless ruled that Brinkley was an employee of Basin Land upon the following three-step analysis:

First, the Commission stated:

"While it may be true that at the time of the accident Brinkley had received no instructions to charge the Basin Land system, it seems highly unlikely that he would have passed the entire day without performing services on behalf of Basin Land.... Although the evidence suggests that Brinkley was bound for a location on the Hat Butte system, it cannot be said that Basin Land retained no power to direct or control Brinkley."

Secondly, the Commission held that since Brinkley was not performing duties specific to his Hat Butte employment and he was subject to the direction and control of either employer at all times, then the "requirement that the accident be clearly identifiable with a particular employer is not met," the Commission citing *Newman v. Bennett*, 512 P.2d 497 (Kan.1973); *Gropp v. Pluid*, 91 Idaho 722, 429 P.2d 852 (1967); *Pinson v. Minidoka Highway District*, 61 Idaho 731, 106 P.2d 1020 (1940).

Thirdly, the Commission reasoned and ruled from its first two premises that since Brinkley did not meet *his burden* of proving that his employment was "clearly identifiable" with Hat Butte, he would be considered to be employed by both companies at the time of the accident.

This appeal presents two issues, the first being whether the Commission erred in placing the burden of proof on Brinkley to establish the employer/employee relationships. The second issue is whether the trial court correctly determined that it was required to defer to the Commission's determination of the first issue.

## I.

We first address the jurisdictional issue. Either the district court or the Industrial Commission has the jurisdiction to determine the employer/employee relationship and the tribunal where the issue is first raised shall prevail. In *Anderson v. Gailey,* 97 Idaho 813, 825, 555 P.2d 144, 156 (1976), this Court specifically held:

> [I]f the notice of injury was filed with the Industrial Commission before the plaintiffs filed their original complaint with the district court, then the Industrial Commission has the first right to determine the jurisdictional issue, and its determination is *res judicata* upon the question of jurisdiction and the factual questions upon which the determination of jurisdiction must necessarily turn. *Id.*

■ Both Brinkley and Hat Butte promptly filed their respective notices of injury in September. Brinkley did not file a civil complaint against Breach until February of the following year. Neither of the notices of injury, however, mentioned Basin Land as the employer. Thus, the Commission erred when it determined that the race to decide jurisdiction was settled by the September notices, since those notices were in no way applicable to the employment relationship, if any, between Brinkley and Basin Land. As established by *Anderson*, the race to file first is between the parties in contention and nothing was filed by either Brinkley or Basin Land to establish the existence of a workers' compensation issue between them until much later than the September notices of injury.

■ The record establishes, however, that the Industrial Commission nevertheless had the jurisdiction to determine the issue because of pleadings filed with it later. In June of 1985, Basin Land filed a formal application for hearing with the Commission to specifically determine Brinkley's employment status at the time of the accident. Basin Land never filed a notice of injury at any time after Brinkley's injury. Brinkley's complaint, filed with the district court in February, had not mentioned Basin Land as a party to the action. It was not until August, 1985, that Brinkley amended his complaint to add Basin Land as a defendant. Therefore, Basin Land won the race to file since its application for hearing preceded Brinkley's amended complaint, the result being that the Commission had properly entertained adjudication of the issue of the employer/employee relationships.

## II.

■ We turn now to the central issue, that is, whether the Commission correctly held that Brinkley did not meet his burden of establishing that his accident was "clearly identifiable" with his Hat Butte employment. Generally, a claimant before the Industrial Commission is the injured employee. In this case, however, Basin Land was the claimant (i.e., the moving party). Basin Land was attempting to use the Workers' Compensation Law as a shield to avoid third-party tort liability. If it were established that Brinkley was injured in the course of his employment with Basin Land, the workers' compensation statutes would provide immunity to Basin Land against the tort claim in district court.

Although there is nothing improper about an employer using the Workers' Compensation Law as a defense against civil tort liability, the Industrial Commission erred in saddling Brinkley with the burden of proof since Basin Land was the claimant:

A claimant in a workmen's compensation cause has the burden of proving compensable disablement, caused by an accident arising out of and in the course of his employment. His proof must establish a "probable, not merely a possible, connection between cause and effect to support his contention that he suffered a compensable accident."

*Kern v. Shark*, 94 Idaho 69, 71, 480 P.2d 915, 917 (1971) (quoting *Davenport v. Big Tom Breeder Farms, Inc.*, 85 Idaho 604, 609, 382 P.2d 762, 764 (1963).) *Callantine v. Blue Ribbon Linen Supply*, 103 Idaho 734, 653 P.2d 455 (1982); see also, *Neufeld v. Browning Ferris Industries*, 109 Idaho 899, 712 P.2d 600 (1985). Although the above precedent is couched in language directed towards employees as claimants, the critical language is that the claimant has the burden of proof. The instant case is unique in that rarely does an employer come before the Industrial Commission as a claimant. One of the fundamental rules of procedure is that the party seeking affirmative relief has the burden of proof. *Woodruff v. Butte & Mkt. L. C. Co.*, 64 Idaho 735, 137 P.2d 325 (1943); *Kingsford v. Bennion*, 68 Idaho 501, 199 P.2d 625 (1948) (overruled on other grounds in *Smith v. Daniels*, 93 Idaho 716, 471 P.2d 571 (1970)).

The Commission was correct in stating that the accident must be "clearly identifiable" with a particular employer. *Newman, supra*. The burden is on the claimant Basin Land, however, to prove by a preponderance of the evidence that Brinkley was operating in the scope of his employment with Basin Land when the accident occurred. If Basin Land fails to meet its burden, then the workers' compensation laws do not apply and Brinkley is free to pursue a third-party civil action against Basin Land and Harold Breach in district court. See I.C. § 72–211 and § 72–223.

Finally, it must be pointed out that the Commission's analysis regarding the status of Brinkley's employment was somewhat skewed. As noted above, the Commission held that Brinkley was not performing duties specific to his Hat Butte employment and he was subject to the direction and control of either employer at all times.

Given the unique character of Brinkley's employment situation, the Commission had some concern whether he was a *joint* or a *dual* employee of the two employers. The Commission cited to 1C Larson, *Workmen's Compensation Law* 48.4 at 8–511:

Joint employment occurs when a single employee, under contract with two employers, and under the simultaneous control of both, simultaneously performs services for both employers, and when the service for each employer is the same as, or is closely related to, that for the other. In such a case, both employers are liable for workmen's compensation. Dual employment occurs when a single employee, under contract with two employers, and under the separate control of each, performs services for the most part for each employer separately, and when the service for each employer is largely unrelated to that for the other. In such a case, the employers may be held liable for workmen's compensation separately or jointly, depending on the severability of the employee's activity at the time of injury.

The Industrial Commission held that Brinkley generally performed services which benefitted one of his employers at any given time and the "dual employment relationship is most applicable." The Commission ultimately held that Brinkley was merely "driving" to a location accessible to either employment and that he did not meet *his* burden that the accident be clearly identifiable with a particular employer. Yet, the Commission ignored another of its findings that "it may be true that at the time of the accident Brinkley had received no instructions to charge the Basin Land system...."

■ It is Basin Land's duty to prove that Brinkley was working for Basin Land when the accident occurred—not Brinkley's duty to prove that he was working for Hat Butte. Brinkley should have been under no duty to prove that he was performing duties for Hat Butte, since the pertinent issue regarding workers' compensation cov-

erage was whether he was working for Basin Land at the time of the accident. Secondly, the fact that Brinkley was subject to the direction and control of either employer at moment's notice is not determinative. What Basin Land must prove as claimant is that Brinkley's injury arose out of and in the course of his employment with Basin Land. *Beebe v. Horton,* 77 Idaho 388, 293 P.2d 661 (1956); *Neufeld v. Browning Ferris, supra.*

Reversed and remanded to the Industrial Commission for further proceeedings, including entry of new findings of fact and conclusions of law and order consistent herewith. Costs to appellant, no attorney fees awarded.

SHEPARD, C.J., and BISTLINE, J., concur.

DONALDSON, J., sat, but did not participate due to his untimely death.

BISTLINE, Justice, specially concurring.

I agree that reversal is warranted because the Commission wrongly saddled Brinkley with the burden of proof. As the majority opinion makes clear, Basin Land, as claimant, has the affirmative burden of establishing that Brinkley's injury arose out of his employment with Basin Land. Of great importance is Brinkley's act *at the time* of the accident. *Beebe v. Horton,* 77 Idaho 388, 391, 293 P.2d 661, 662–63 (1956). Consequently, if the evidence fails to establish that Brinkley's injury is clearly identifiable with Basin Land at the time of the accident, it would follow that Basin Land has failed to carry its burden as a matter of law.

The record does not support a finding that Brinkley was working for Basin Land. This notion is buttressed by the fact that Hat Butte has already admitted that Brinkley was operating in the course of employment with Hat Butte at the time of the accident. Brinkley also received worker's compensation benefits through Hat Butte. More important, the Commission has already found that at the time of the accident, Brinkley was "bound for a location on the Hat Butte system," which had nothing to do with Basin Land.

The Pierstorff rule, *Pierstorff v. Gray's Auto Body Shop,* 58 Idaho 438, 74 P.2d 171 (1937) was heavily relied on as recently as in *Dinneen v. Finch,* 100 Idaho 620, 626–27, 603 P.2d 575 (1979). The case in which the rule arose was a workman's compensation case, as is this case now under our review. Accordingly, it is deemed appropriate to remind the Commission of the rule as set out in *Dinneen:*

> However, the evidence here was *not* conflicting, and another well established rule governs this situation:
>
> 'The rule applicable to all witnesses, whether parties or interested in the event of an action, is, that either a board, court, or jury must accept as true the positive, uncontradicted testimony of a credible witness, unless his testimony is inherently improbable, or rendered so by facts and circumstances disclosed at the hearing or trial. *Manley v. Harvey Lumber Co.,* 175 Minn. 489, 221 N.W. 913, 914. In *Jeffrey v. Trouse,* 100 Mont. 538, 50 Pac.2d 872, 874, it is held that neither the trial court nor a jury may arbitrarily or capriciously disregard the testimony of a witness unimpeached by any of the modes known to the law, if such testimony does not exceed probability. And, in *Arundel v. Turk,* 16 Cal. App.2d 293, 60 Pac.2d 486, 487, 488, the rule is stated thus: "Testimony which is inherently improbable may be disregarded, * * * but to warrant such action there must exist either a physical impossibility of the evidence being true, or its falsity must be apparent, without any resort to inferences or deductions." ' *Dinneen v. Finch,* 100 Idaho 620, 626–27, 603 P.2d 575, 581–82 (1979).

The *Pierstorff* opinion also contained another passage with a message of advice to the Commission:

> And in the case of *Adams v. Bunker Hill etc. Min. Co.* (on rehearing), 12 Ida. 637, 89 Pac. 624, 628, 11 L.R.A., (N.S.) 844, this court said: 'There are very few

things in human affairs, and especially in litigation involving damages, that can be established to such an absolute certainty as to exclude the *possibility,* or even some *probability,* that another cause or reason may have been the true cause or reason for the damage rather than the one alleged by the plaintiff. But such *possibility,* or even *probability,* is not to be allowed to defeat the right of recovery where the plaintiff has presented to the jury sufficient facts and circumstances surrounding the occurrence as to justify a reasonable juror in concluding that the thing charged was the prime and moving cause.' *Pierstorff v. Gray's Auto Shop,* 58 Idaho 438, 443–44, 74 P.2d 171, 173 (1937) (emphasis supplied).

In concluding my thoughts, I suggest that it only has to be kept in mind that although Basin Land had the right to control Brinkley, that is not the equivalent of being in the exercise of that right at the time pertinent.

BAKES, Justice, concurring in part and dissenting in part:

I concur in Part I of the majority opinion, regarding the jurisdictional issue. As to Part II, I concur with the majority's decision not to disturb the commission's conclusion regarding "dual employment." As to the rest of Part II, however, I respectfully dissent.

Construing the record most favorably to the party which prevailed below, as we must, *Hazen v. General Store,* 111 Idaho 972, 729 P.2d 1035 (1986); *Higginson v. Westergard,* 100 Idaho 687, 604 P.2d 51 (1979), it reveals the following facts, in addition to those acknowledged by the majority.

Basin Land and Hat Butte are Idaho corporations organized to provide irrigation services to their respective shareholders. The facilities of the respective corporations lie in close proximity to one another and include pumps, canals and ponds.

Besides splitting Brinkley's expenses, worker's compensation premiums, and salary, the two companies also performed a 35/65 split on his housing costs, payroll taxes and auto insurance premiums, and jointly supplied him a pickup equipped with a mobile phone. Brinkley's employment was a joint decision of Hat Butte and Basin Land, and Brinkley understood that he was subject to the direction and control of both corporations respectively regarding the duties to be performed for each corporation. Brinkley's primary duties were: (1) to clean, inspect and maintain canals and ponds; (2) to inspect, service, and maintain pumps located on the Snake River; (3) to take water orders from stockholders; and (4) to generally coordinate the supply of irrigation water to the stockholders of each of the two corporations. The facilities of the two corporations were in very close physical proximity, and during any given day Brinkley performed multiple duties for both corporations.

On August 28, 1984, a pond in the Basin Land system ruptured, causing a washout of that pond and the adjacent Hat Butte canal. The systems of both corporations were not operational until repairs were completed on about Thursday, August 30, 1984.

By Saturday, September 1, water had still not been placed in the Basin Land canal system. The Basin Land stockholders had not been able to irrigate in the interim, and at least two stockholders intended to irrigate that day and were anxious for the pumps to be activated.

As noted, *ante* at 122, 754 P.2d at 435, on the morning of September 1, 1984, Brinkley was involved in an automobile accident with Harold Breach. Brinkley had just left his home driving the company-supplied pickup. The accident occurred .2 of a mile from Brinkley's home at an intersection of roads at a point approximately one-half mile from the nearest Hat Butte canal, and approximately one and one-half miles from the nearest Basin Land canal. While Brinkley testified that he had no plans to inspect or perform services on any part of the Basin Land system on September 1, 1984, and that he had received no instructions from any Basin Land stockholder to turn on Basin Land irrigation pumps, there was conflicting testimony from other wit-

nesses. The testimony of Mike Breach is mentioned, *ante* at 122, 754 P.2d at 435, and was supplemented by another Basin Land stockholder (Tiegs) who testified that there was an information board near a pond pump site where orders for water were written, usually a day or two in advance. Tiegs testified that on the evening before the accident he saw an order written on the board directing Brinkley to activate the Basin Land pumps on September 1. Both these testimonies harmonize with Basin Land's written Irrigation Guidelines stating that "Irrigators are to give the Ditchrider a minimum of 12 hours notice when they desire to turn on or shut off water. We should give 24 hour notice if possible."

As the Court's opinion notes, Breach testified that he called Brinkley's home the evening before September 1st and left word to have the pumps turned on the next morning. Mike Breach further testified that he went to the Basin Land ponds to commence irrigating at about 7:00 a.m., September 1, 1984, thinking that Brinkley would have turned on the pumps by that time, but that no water had been turned on. Shortly after, he heard on his pickup radiophone that Jerry Brinkley and his father had been involved in an automobile accident. He went to the scene of the accident and, along with others who had gathered, rendered aid. Shortly thereafter, he went to the river and turned on the Basin Land pumps himself.

Subsequent to the accident, Brinkley filed worker's compensation claims against Hat Butte and its worker's compensation surety, Insurance Company of North America. The surety paid Brinkley appropriate worker's compensation benefits on behalf of Hat Butte as employer. Although Basin Land had paid Hat Butte a sum of money for its portion of the worker's compensation premium, Basin Land was not listed as an insured on the policy. The policy did indicate, however, that Hat Butte was a "joint venture."

As the Court's opinion points out, a tort action was initiated in district court on behalf of Brinkley and his spouse against Harold Breach, as an individual, and Breach Enterprises. An amended complaint later added Basin Land as a defendant. Prior to being joined as a defendant in the district court action, however, Basin Land filed an application for hearing before the Industrial Commission, asserting that Brinkley "was a joint employee of Hat Butte and Basin Land at the time of the accident," which would have the effect of limiting Brinkley's recovery for the accident to that provided by the Workmen's Compensation Law. After the Industrial Commission determined that it had jurisdiction to hear and decide the substantive issues in the case, a commission referee further found that: (1) when Brinkley was injured he was a "dual employee," performing duties for both Basin Land and Hat Butte, and (2) it had not been shown that his activity at the time of the injury was so tied to one employer that the employment relationship could be considered severable and Brinkley's activity attributable only to that one employer. The Industrial Commission adopted the referee's findings. As the commission stated, this situation fits the "dual employment" scenario:

> "Even though the overlap of services and control for the respective employers does not fit neatly into the 'joint employment' or 'dual employment' categories, it appears that the dual employment relationship is most applicable."

This conclusion has not been disturbed by the majority, and I concur.[1] Beyond this point, however, our views diverge.

The commission correctly applied the law, as summarized in 1C Larson, *Workmen's Compensation Law*, § 48.00 (1986), which states that in dual employment situa-

---

1. Before the Industrial Commission the parties, recognizing that Brinkley had more than one employer, focused on the distinction between "joint employment" and "dual employment." *Ante* at 124–125, 754 P.2d at 437. The commission, too, focused on the distinction and concluded that, for the most part, at any given moment Brinkley was performing services which benefitted only one employer, or at least benefitted one employer far more than the other, and thus it was dual employment.

tions, both employers are liable for worker's compensation benefits (and are thus shielded from tort liability), unless the services being performed at the time of the accident are clearly identifiable with a specific employer.

"Dual employment occurs when a single employee, under contract with two employers, and under the separate control of each, performs services for the most part for each employer separately, and when the service for each employer is largely unrelated to that for the other. In such a case, the employers may be liable for workmen's compensation separately or jointly, depending on the severability of the employee's activity at the time of injury." 1C Larson, *Workmen's Compensation Law*, § 48.41 (1986).

Squarely on point is *Clemmer v. Carpenter*, 98 N.M. 302, 648 P.2d 341 (App. 1982), *reh'g denied*, May 24, 1982, *cert. denied*, 98 N.M. 336, 648 P.2d 794 (1982). Rex Clemmer was employed by William Carpenter, an attorney, and by the Coast Guard Reserve. Early on the morning of February 19, 1979, Clemmer was killed in an automobile accident while driving to Albuquerque from his home in Estancia. Clemmer was on his way to Albuquerque to accomplish work for both the Coast Guard Reserve and attorney Carpenter. He had not engaged in activities specifically attributable to either one employer or the other at the time of the accident.

In resolving the case, the New Mexico court stated that the situation amounted to dual employment, quoting verbatim from *Larson* as the majority does, *ante* at 124, 754 P.2d at 437. The court continued its analysis:

"When Clemmer was killed, he was driving from Estancia to Albuquerque to accomplish work for both the Coast Guard Reserve and William Carpenter. The fact that he intended to attend the Coast Guard Reserve meeting first does not negate the trip as regards his purposes for Carpenter, because he would have had to drive into Albuquerque for Carpenter anyway. Also, the fact that Clemmer was driving early in the morning does not negate his purpose of doing work for Carpenter when he was in Albuquerque.

"In dual-employment situations, if the accident occurs when the work[er] is clearly performing services for only one employer, then that employer is liable for any workmen's compensation benefits. *If, however, the services being performed at the time of the accident cannot be attributed to a specific employer, but are services performed for both employers, then both employers are liable.*" 648 P.2d at 347–348 (emphasis added).

Thus, once the existence of a dual employment situation has been established, both employers are liable for worker's compensation (with its attendant tort immunity), unless the worker is clearly performing services for only one employer when the accident occurs. If the worker is clearly performing services for only one employer, then that employer is exclusively liable for worker's compensation; if not, both employers remain liable.

Other courts are in accord. In *Ray v. Babcock & Wilcox Co., Inc.*, 388 So.2d 166 (Miss.1980), the Supreme Court of Mississippi stated:

"This Court has held that when an employee is engaged in the service of two (2) employers in relation to the same act (dual employment), both employers are exempt from common law liability, although only one of them has actually provided workmen's compensation insurance." 388 So.2d at 167.

In *Oilfield Safety & Machine Specialties, Inc. v. Harman Unlimited, Inc.*, 625 F.2d 1248 (5th Cir.1980), the Fifth Circuit Court of Appeals, after noting that Congress (as did Idaho, I.C. § 72–201) designed a worker's compensation act to provide injured employees with certain and absolute benefits instead of potential common law benefits obtainable only *via* tort actions against the employer, stated:

"This structure [absolute worker's compensation benefits instead of common law benefits] is best served by a rule holding dual employers jointly and sever-

ally liable for compensable injuries incurred by employees." 625 F.2d at 1256. One last example from *Chiulli v. Getty Square Pizza, Inc.*, 59 A.D.2d 801, 398 N.Y.S.2d 752 (1977). After quoting the "dual employment" language from Larson (as did the *Clemmer* court and the majority, *supra*) the court expands its analysis by borrowing further from Larson's treatise:

> "Furthermore, as Larson states in his treatise on workmen's compensation: 'When this separate identification [*i.e.*, the severability of the employee's activity at the time of injury in a dual employment situation] can clearly be made, the particular employer whose work was being done at the time of the injury will be held exclusively liable [for worker's compensation]'." 398 N.Y.S.2d at 754, *quoting* 1A Larson, Workmen's Compensation Law, § 48.00.

The facts in the instant case are analogous to those in *Clemmer*. The record shows that, at the time of the accident, Brinkley was driving the pickup to the worksite of both employers. While he first planned to work for Hat Butte, the fact that he would soon perform services for Basin Land (barring the accident) is amply demonstrated (1) by the water order written on the information board, (2) by the testimony of Mike Breach regarding a water order entered the night before the accident, and (3) by the fact that Mike Breach made an early-morning search for the requested water, ultimately activating the pumps himself. Further, as reiterated in *Clemmer*, the fact that Brinkley intended to perform services for one employer first does not negate his travels with regard to the other employer.

The law applicable to this situation, as stated in Larson and the cases cited above, is that once a dual employment scenario has been established both employers are liable for worker's compensation (and are accordingly immune from tort liability) unless the services being performed at the time of the accident can be attributed solely to a specific employer. *Clemmer* states that in order for services to be attributed to a specific employer, the worker must be "clearly performing" services for that one employer only. Other jurisdictions have used similar language. In *Pinson v. Industrial Comm'n of Arizona*, 79 Ariz. 21, 281 P.2d 962, 965 (1955), the Supreme Court of Arizona states that the employee's activities at the time of the injury must be "clearly severable," or so "completely identifiable" with one employer "as to be beyond dispute." *Accord Newman v. Bennett*, 212 Kan. 562, 512 P.2d 497 (1973) ("clearly identifiable with any particular employer"). In dual employment situations, the test which may separate one employment from the other is whether the duties "are so separate and distinct in time or place that the employment is capable of identification as that of only one employer." *Goldstein v. House of Schrager, Inc.*, 19 A.D.2d 759, 241 N.Y.S.2d 925, 926 (1963), *quoting Matter of Hunt v. Regent Development Corp.*, 3 N.Y.2d 133, 164 N.Y.S.2d 694, 696, 143 N.E.2d 892, 893–94 (1957).

The Industrial Commission understood and applied the correct legal analysis to Brinkley's employment status, and its findings and conclusions are supported by evidence in the record. At the beginning of its conclusions of law, the commission properly notes that Brinkley's employment relationship with Basin Land is the initial issue. After discussing the various outcomes possible, the commission concluded that Brinkley's situation best fits the "dual employment" scenario. With the dual employment scenario established, both Basin Land and Hat Butte became liable for worker's compensation benefits, unless it could be shown that Brinkley's activities at the time of the accident were indisputably, clearly and completely identifiable with one employer or the other. The commission recognized this when, in the sentence immediately following its conclusion regarding dual employment, it stated:

> "The other question that must be answered is whether Brinkley's activity at the time of the injury was so tied to one employer that the employment relationship could be considered severable, and attributable only to that employer."

The commission was well briefed on the issue via post-hearing memoranda of counsel for Hat Butte and its surety. The commission found that at the time of his accident, Brinkley was performing no specific duty directly and indisputably attributable to either Basin Land or Hat Butte, but was traveling in the jointly supplied pickup to the location of the canal systems to begin his duties. His driving was benefitting both employers, and he would soon be (though he was not yet) performing services clearly identifiable with each employer. That Brinkley would soon perform services for both employers is demonstrated by his own testimony, and by the testimony of Breach and Tiegs, and is further demonstrated by evidence of the water order on the information board at the pump site. Further, Brinkley was subject to the direction and control of either employer at a moment's notice via (1) the above referenced information board, (2) personal contact (such as that attempted by Mike Breach on the morning of September 1,), and (3) his phones—one in his house, the other in his pickup. All this evidence prompted the commission to conclude that "[t]he requirement that the accident be 'clearly identifiable' with a particular employer is not met." Since it was not met, and since this is a "dual employment" situation, worker's compensation liability (and tort immunity) necessarily remained attached to both employers.

The majority erroneously asserts that the commission put the initial burden on Brinkley to prove that his employment was "clearly identifiable" with Hat Butte. The commission did not. Rather, it first required claimant Basin Land to establish an employment relationship with Brinkley, which burden Basin Land met when it proved the dual employment relationship which Brinkley had with both Basin Land and Hat Butte, as the commission found. Once the dual employment relationship was established, as the above cited authorities point out, the commission correctly concluded that both employers were liable for

worker's compensation (and, conversely, were immune from tort liability) unless Brinkley's activities at the time of the accident could be indisputably, clearly and completely identified with one particular employer. The commission correctly concluded that the burden of proving such severance and identification should be placed on Brinkley. It is senseless to place that burden of proof on Basin Land because it has no incentive to prove that Brinkley was working solely for Hat Butte. If the commission's finding of dual employment places worker's compensation liability on both employers, then realistically the secondary burden of proving that the accident was clearly identifiable with a particular employer must necessarily rest upon the person who has an incentive to prove that particular employment. Since only Brinkley has the incentive to prove that his activities were "clearly identifiable" solely with Hat Butte, the commission correctly concluded that once Basin Land carried its initial burden of proving Brinkley's dual employment with both Basin Land and Hat Butte, thus placing dual liability on both employers, that Brinkley was compelled to bear the burden of proving that at the time of the accident his employment was clearly identified with Hat Butte, rather than Basin Land.

The commission found, based on the evidence, that Brinkley had a dual employment relationship with both Hat Butte and Basin Land, and that his activity at the time of the accident and injury was not severable and clearly identifiable with a particular employer, therefore concluding that both employers were liable for worker's compensation benefits (and, conversely, both were immune from tort liability). The majority has affirmed the commission's finding of dual employment, but nevertheless, the majority reverses and remands stating, at three separate places in its opinion, that the burden is on the claimant, Basin Land, to prove that Brinkley was working for Basin Land when the accident occurred.[2] This the majority man-

2. From page 124, 754 P.2d page 437: "The burden is on the claimant Basin Land, however, to prove by a preponderance of the evidence that

Brinkley was operating in the scope of his employment with Basin Land when the accident occurred."

dates in spite of the commission's express finding

"that Basin Land Irrigation Company was an employer of Jerry Brinkley on September 1, 1984, and that the injuries suffered by Brinkley arose out of that employment relationship. At the time of the accident, Brinkley was acting within the course and scope of his employment with Basin Land Irrigation Company."

The commission has already fulfilled the majority's directive after properly applying the applicable law. Accordingly, I would affirm.

From page 124, 754 P.2d page 437: "It is Basin Land's duty to prove that Brinkley was working for Basin Land when the accident occurred—not Brinkley's duty to prove that he was working for Hat Butte."

Again from page 125, 754 P.2d page 438: "What Basin Land must prove as claimant below is that Brinkley's injury arose out of and in the course of his employment with Basin Land."