# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 51722

| | | |
|---|---|---|
| SHERRI SUE CORONADO, | ) | |
| | ) | |
| Claimant-Appellant, | ) | Boise, September 2025 Term |
| | ) | |
| v. | ) | Opinion Filed: November 14, 2025 |
| | ) | |
| CITY OF BOISE, Self-Insured Employer, | ) | Melanie Gagnepain, Clerk |
| | ) | |
| Defendant-Respondent, | ) | |
| | ) | |

Appeal from the Idaho Industrial Commission.

The Commission's order denying the First Petition is <u>affirmed</u>. The Commission's order denying the Second Petition is <u>set aside</u>.

Goicoechea Law, LLC, Lewiston, for Appellant. Justin Aylsworth and Michael Kessinger, argued.

Breen Veltman Wilson, PLLC, Boise, for Respondent. Emma Wilson, argued.

Hawley Troxell Ennis & Hawley, LLP, Boise, for Amicus Curiae Idaho State Insurance Fund. Mark C. Peterson, argued.

_____

BRODY, Justice.

This appeal arises from two Idaho Industrial Commission decisions denying Sherri Sue Coronado's petitions for declaratory rulings. In 2019, Coronado suffered an industrial accident while employed as a police officer by the City of Boise ("Employer"). Employer accepted Coronado's claim for a right hip injury and initiated voluntary compensation. However, one year later, Employer declined to authorize compensation for medical treatment of Coronado's left hip, and Coronado refused Employer's requests for access to her medical records and to schedule an independent medical examination ("IME"). Employer, acting through its third-party administrator and without an order from the Commission, sent Coronado a letter stating that it was temporarily suspending Coronado's compensation payments as then permitted by this Court's interpretation of Idaho Code section 72-434 under *Brewer v. La Crosse Health & Rehab*, 138 Idaho 859, 71 P.3d

458 (2003). The Industrial Commission later determined that Coronado's benefits were not actually suspended.

Several years after the letter purporting to suspend benefits was sent, in *Arreola v. Scentsy, Inc.*, this Court overruled *Brewer* and held that only the Commission has the authority to (1) resolve IME disputes and (2) order the suspension of a claimant's compensation payments under Idaho Code section 72-434. 172 Idaho 251, 531 P.3d 1148 (2023). Thereafter, Coronado filed a petition for a declaratory ruling with the Commission to determine whether *Arreola* applied retroactively.

While her petition was pending, Employer filed a complaint under Judicial Rule of Practice and Procedure ("JRP") 3(A) against Coronado requesting the Commission adjudicate various issues concerning Coronado's entitlement to benefits and her failure to submit to IMEs. Rule 3(A) provides that the "application for hearing" referenced in Idaho Code section 72-706 "shall be called a complaint." The complaint informed Coronado that her failure to timely file an answer may result in a default. Coronado responded by filing a second petition, asking the Commission to determine whether Employer could file an application requesting a hearing (the complaint already filed by Employer) to litigate a worker's right to compensation.

The Commission declined to address the merits of Coronado's first petition, concluding that it was procedurally improper and instructed Coronado to pursue relief through administrative litigation to resolve the underlying factual disputes. It subsequently denied Coronado's second petition on the merits, holding that it had "jurisdiction" to adjudicate an employer's complaint pursuant to Idaho Code section 72-707.

On appeal, Coronado argues, among other things, that she is entitled to relief under *Arreola* because Employer lacked authority to unilaterally terminate her benefits. She further contends that the worker's compensation law ("WCL") does not permit an employer to file a complaint to litigate a worker's right to compensation. As we explain, Coronado's claim to *Arreola* relief is not justiciable. With respect to Coronado's second claim—that the WCL does not allow an employer to "make and file with the commission an application requesting a hearing[,]"—we agree. *See generally* I.C. § 72-706. When the subject matter of a hearing concerns the compensatory rights described in section 72-706, only an employee may file a complaint to request a hearing before the Commission.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. Factual Background

2

Coronado was a police officer for the City of Boise. On May 29, 2019, she suffered various injuries during a traffic stop, including to her right hip, after she was dragged by and thrown from a motor vehicle while attempting to prevent a suspect from driving away. Employer, through its third-party administrator, Intermountain Claims Inc. ("Claims Examiner"), accepted Coronado's claim for a right hip injury and initiated compensation. Employer also continued to pay Coronado's full salary. *See* I.C. § 72-1104(1)(c) (providing "full rate of base salary" for peace officers injured on the job). Thereafter, on November 18, 2019, Coronado's treating physician, Colin Poole, M.D., performed a right total hip arthroplasty (hip replacement).

Five months later, on May 5, 2020, Dr. Poole documented that Coronado had "some sharp stabbing pain to the left hip[,]" which was "consistent with possible acetabular labral tear[,]" and recommended an MRI. Two days later, in response to a questionnaire from the Claims Examiner, Dr. Poole indicated he could not state with medical certainty that either the pain in Coronado's left hip, or the need for an MRI of the left hip, was related to an industrial accident. He further indicated that the need for an MRI was "unrelated" to the industrial injury (i.e., the right hip), and that Coronado was "medically stable" in relation to that injury, subject to permanent restrictions against running or other high-impact activities.

About a week later, Coronado underwent an MRI of the left hip. Dr. Poole reviewed the MRI and concluded that it revealed "moderate osteoarthritis involving the anterior aspect of the left acetabulum, cartilage fissuring involving the femoral head, and anterior superior labral tear." Dr. Poole also opined that Coronado "would be a very good candidate to consider joint replacement surgery as a long-term treatment strategy for her left hip symptoms." That same day, the Claims Examiner emailed Coronado a copy of the questionnaire Dr. Poole had completed several days earlier and asked whether she was available on June 10, 2020, for an independent medical examination ("IME") to determine her impairment rating. When Coronado did not respond, the Claims Examiner followed up two days later, asking her to confirm the June 10 examination.

Employer alleges that Coronado "again did not respond," and on May 18, 2020, the Claims Examiner informed Coronado by email that she would be scheduled for the June 10 evaluation because "spots are filling up fast and I have not heard back from you." Two days later, on May 20, 2020, Dr. Poole wrote to the Claims Examiner stating that Coronado was medically stable but clarified that she was not at maximum medical improvement ("MMI") with respect to her right hip.

3

On May 26, 2020, Coronado's attorney sent Dr. Poole a letter requesting "medical opinions and clarification with respect to some impending left hip issues that have recently arisen [in] her case." Dr. Poole responded two days later, stating in relevant part that Coronado's MRI findings, left hip symptoms, and need for a left hip arthroplasty were due to her industrial injury on a medically more-probable-than-not basis. Thereafter, on June 1, 2020, Coronado emailed the Claims Examiner a copy of her recent left hip MRI report, the notes from her last appointment with Dr. Poole, and a copy of Dr. Poole's response to her attorney's letter. Coronado requested that the IME appointment be rescheduled because it was "not feasible at this time" given Dr. Poole's assessment that she was not at MMI. Coronado also informed the Claims Examiner she was scheduled for a left hip arthroplasty on July 1, 2020, and inquired whether the left hip MRI and left hip total arthroplasty were accepted and authorized.

That same day, the Claims Examiner responded that payments for the MRI and surgery would not be authorized due to Dr. Poole's initial letter indicating that the left hip issues were unrelated to the industrial accident. The Claims Examiner stated it needed further clarification due to the conflicting medical opinions, and that it intended to move forward with the IME on June 10, 2020, as scheduled. It also warned Coronado that her "[f]ailure to attend the scheduled appointment [would] impact [her] medical benefits." According to Employer, "[f]our days later, the [C]laims [E]xaminer paid for Claimant's left hip MRI."

On June 8, 2020, Coronado's attorney sent the Claims Examiner a letter of representation. He stated that the Claims Examiner needed to coordinate any IMEs through his office, and that "due to pre-surgical obligations/appointments," Claimant was unavailable and would not be attending the IME scheduled for June 10, 2020. He further informed the Claims Examiner that Coronado was willing to submit to an IME, but those evaluations needed to "be 'reasonable' as to time and place, in consideration of her specific circumstances, and in direct coordination with [his] [o]ffice." Employer's counsel sent a letter in response, which noted that the June 8, 2020, correspondence was the first notice that Coronado was unavailable for the IME and asserted that Coronado's refusal to submit to the examination with less than two days' notice was not reasonable and could jeopardize her entitlement to benefits.

The next day, on June 9, 2020, Coronado's counsel revoked all medical releases Coronado executed in favor of the Claims Examiner. After Coronado failed to attend the June 10 IME appointment, the Claims Examiner notified Coronado that her benefits would be suspended

4

pursuant to Idaho Code section 72-434, which authorizes the suspension of benefits when an employee unreasonably fails to submit to an IME:

> If an injured employee unreasonably fails to submit to or in any way obstructs an examination by a physician or surgeon designated by the commission or the employer, the injured employee's right to take or prosecute any proceedings under this law shall be suspended until such failure or obstruction ceases, and no compensation shall be payable for the period during which such failure or obstruction continues.

I.C. § 72-434. Nevertheless, the Commission found that, based on the evidence before it, "no suspension was ever carried out in relation to this statement." On July 1, 2020, Coronado underwent a total left hip arthroplasty, which was performed by Dr. Poole and covered by Coronado's private health insurance.

Between July 2020 and March 2021, Employer's counsel made multiple (and unsuccessful) attempts through letters and voicemails to: (1) confer with Coronado's counsel regarding the case, (2) access Coronado's medical records, and (3) schedule a new IME to evaluate both her left and right hip conditions. According to Employer, Coronado's attorney never responded.

On April 28, 2021, nearly a year after Employer first requested that Coronado attend an IME, Employer's counsel sent Coronado's attorney a letter that the Claims Examiner had scheduled Coronado for an examination with Timothy Doerr, M.D., on May 25, 2021. Coronado's attorney responded that Coronado would not be attending the "unilaterally scheduled" examination. He further stated that the Claims Examiner's "unreasonable actions created the current 'wilderness,'" and advised that, unless Coronado's "status change[d]," they would not "engage in, nor respond to, any further unavailing, circuitous argument(s), explanation(s), rationalization(s), recriminations, *etc.*, with respect to the foregoing issue(s)."

In May 2021, after reviewing the available records in Coronado's case, Dr. Doerr issued an opinion finding the industrial accident did not cause Coronado's left hip condition. Specifically, he opined that Coronado's left hip pain was likely due to the natural progression of her underlying "left hip degenerative joint disease," which was "unrelated to the 05/29/19 industrial injury." He further opined that Coronado's right hip reached MMI on May 7, 2020, and Coronado suffered ten percent whole person impairment. Dr. Doerr issued Coronado a twenty-five percent lower extremity permanent partial impairment rating ("PPI"), apportioning fifty percent of this rating to a preexisting degenerative joint disease and fifty percent to Coronado's industrial accident.

5

On June 9, 2021, the Claims Examiner issued a notice of claim status letter to Coronado regarding Dr. Doerr's PPI rating that included a copy of Dr. Doerr's report. The Claims Examiner stated a PPI check would be issued every four weeks until paid in full. PPI checks were issued to Coronado on June 17, 2021, and June 30, 2021, totaling $10,806.50. Coronado refused to accept these checks, and her attorney returned them to Employer's counsel along with a warning that the Claims Examiner's direct contact with Coronado amounted to harassment.

The record is silent on what, if anything, occurred over the next two years. However, on June 23, 2023, this Court issued its opinion in *Arreola v. Scentsy, Inc.*, 172 Idaho 251, 531 P.3d 1148 (2023). In relevant part, the Court held that only the Commission has the authority to adjudicate IME disputes, and to enforce that adjudication through the enforcement mechanisms in Idaho Code section 72-434 by ordering the suspension of a claimant's compensation payments. *Id.* at 256–62, 531 P.3d at 1153–59, *overruling Brewer v. La Crosse Health & Rehab*, 138 Idaho 859, 71 P.3d 458 (2003). On remand, the Court instructed the Commission to determine, in the first instance, "the procedural process governing medical exam disputes under Idaho Code sections 72-433(1) and 72-434." *Id.* at 262, 531 P.3d at 1159.

More than three months after *Arreola* was published, Coronado's attorney sent a letter to Employer's counsel demanding that Employer take corrective action to bring itself into "full compliance" with the decision. He further demanded the payment of medical benefits at the full-invoiced amount, wages, and various employment benefits while noting that his demand did not account for PPI, permanent disability, and sanctions. Employer's counsel rejected his demand, noting that the Court expressly stated in *Arreola* that the holding applies "only prospectively." *See Arreola*, 172 Idaho at 262, 531 P.3d at 1159 ("Because our overruling of *Brewer* applies only prospectively, we remand with instructions . . . ."). Employer further noted that, based on Dr. Doerr's report, Coronado's left hip condition was not caused or permanently aggravated by her industrial injury.

## B. Procedural Background.

On November 6, 2023, Coronado filed a petition for a declaratory ruling with the Commission requesting "affirmative '*Arreola*' relief" ("First Petition"). Specifically, Coronado requested (1) a ruling that *Arreola* applied to Coronado and similarly situated injured workers; (2) an order compelling Employer to file a petition "to address its dual I.C. §§ 72-433/34 'reasonable'

6

burdens of proof, whereupon the Commission will hold a hearing, to, among other things, allow for the adducement of live testimony;" and (3) an award of sanctions against Employer.

Within two weeks, on November 16, 2023, Employer filed a worker's compensation complaint utilizing the Claimant's Workers' Compensation Complaint form from the Judicial Rules of Procedure Appendix 1, which it modified to accommodate the filing by Employer (e.g., it changed the title of the form to "Defendant's Workers' Compensation Complaint"). Employer's complaint requested a determination of various issues concerning Coronado's entitlement to benefits and Coronado's failure to submit to two scheduled IMEs, including:

- The date of medical stability.
- Causation for Claimant's left hip condition and need for surgery.
- Claimant's entitlement to medical benefits.
- Claimant's entitlement to temporary total disability or temporary partial disability (TTD/TPD) benefits, or her full rate of base salary pursuant to Idaho Code § 72-1104.
- Claimant's entitlement to PPI benefits, including whether she is estopped from receiving additional PPI based on her rejection of prior PPI payments or Defendant is entitled to a credit for PPI paid.
- Claimant's entitlement to [permanent partial disability (PPD)] benefits.
- Whether Claimant unreasonably failed to submit to or in any way obstructed an examination scheduled pursuant to Idaho Code § 72-433.
- Employer's entitlement to sanctions.

The complaint also informed Coronado that her failure to file an answer within twenty-one days may result in a default award being entered against her. Employer also requested discovery and permission to depose Coronado.

The next day, on November 17, 2023, Employer filed a response to Coronado's First Petition. Employer requested that the Commission decline to issue a written ruling that had the force and effect of a final order because a final order would be immediately appealable as a matter of right, which would delay the underlying proceedings. Employer argued that the factual issues Coronado asked the Commission to determine in her First Petition were more appropriately addressed through a complaint. Employer also maintained that *Arreola*'s holding only applied prospectively.

On December 7, 2023, Coronado filed an objection and motion to strike Employer's complaint, which was summarily denied by the assigned referee about two weeks later. Coronado was given twenty days to file an answer to the complaint. No motion to reconsider or appeal was filed from the referee's decision. Instead, on January 4, 2024, Coronado filed a new petition for

7

declaratory relief ("Second Petition") seeking an order from the Commission that the right to file a complaint is exclusively granted to injured workers. Coronado argued, among other things, that permitting an employer or surety to file a complaint (1) violated the WCL, and (2) was outside the grant of jurisdiction given to the Commission under Idaho Code section 72-706.

In response to Coronado's Second Petition, Employer argued the Commission had authority to receive a complaint from employer under Idaho Code section 72-707 and JRP 1(A). Section 72-707 provides that "[a]ll questions arising under this law, if not settled by agreement or stipulation of the interested parties with the approval of the [C]ommission, except as otherwise herein provided, shall be determined by the [C]ommission." I.C. § 72-707. JRP 1(A) provides, in relevant part: "[a]ny party to a controversy may apply to the Commission for relief, and the Commission shall make such order, ruling or award as it determines is reasonable and just." Thereafter, on January 30, 2024, the Commission stayed all proceedings related to Employer's complaint pending the Commission's determination of Coronado's two petitions.

On February 23, 2024, the Commission issued an order denying Coronado's First Petition. The Commission, in accordance with JRP 15(F)(4)(e), declined to issue a declaratory judgment because the issues raised in the First Petition should be the subject of a worker's compensation complaint. Under that rule, the Commission may decline to issue a declaratory judgment where "[t]he issue on which a determination is sought is or should be the subject of other administrative or civil litigation or appeal . . . ." JRP 15(F)(4)(e)**.** Second, the Commission held that Coronado did not have a direct interest or actual controversy in the resolution of the current question because her undisputed benefits were not suspended pursuant to Idaho Code section 72-434. Rather, Employer subsequently obtained a permanent partial impairment (PPI) rating from a medical expert and issued PPD payments to Coronado, thereby rescinding any suspension**.** Third, the Commission held that *Arreola* did not provide grounds to award Coronado affirmative relief because the decision only applied prospectively. The Commission also denied Coronado's request to certify matters for appeal to this Court.

On March 8, 2024, the Commission issued an order denying Coronado's Second Petition. In relevant part, the Commission held that it has jurisdiction to receive an employer's complaint pursuant to Idaho Code section 72-707 and this Court's decisions in *Brooks v. Standard Fire Insurance Co.*, 117 Idaho 1066, 793 P.2d 1238 (1990); *Basin Land Irrigation Co. v. Hat Butte Canal Co.*, 114 Idaho 121, 754 P.2d 434 (1988); and *Arreola*. The Commission explained that the

8

relevant question was whether the dispute involves a question "arising under this law [section 72-707]," not whether the worker or an employer filed the complaint." The Commission further determined that permitting an employer or surety to submit a complaint was consistent with (1) "the plain language of the JRP rules" and prior Commission precedent, and (2) the policy of the WCL. The Commission also rejected Coronado's argument that section 72-706 affirmatively restricts employers or sureties from filing a complaint because it was a statute of limitations that "restricts based on timeliness and only timeliness" but "does not purport to govern who may file a complaint." The Commission stated that its "decision [was] final and conclusive as to all matters adjudicated" pursuant to Idaho Code section 72-718.

In response to the Commission's orders, Coronado filed a timely notice of appeal covering both orders. Two months later, Coronado filed her own worker's compensation complaint with the Commission pursuant to JRP 3 and an officer complaint for continuation of salary benefit. Thereafter, Employer moved to dismiss its complaint on June 14, 2024. About two weeks later, on June 26, 2024, the referee issued a letter informing the parties that proceedings were stayed pending the outcome of Coronado's appeal, which included the determination on Employer's motion to dismiss its complaint.

## II.    STANDARDS OF REVIEW

"On appeal from orders of the industrial accident board the court shall be limited to a review of questions of law." Idaho Const. art. V, § 9. "[T]his Court exercises free review over the Commission's legal conclusions." *Arreola v. Scentsy, Inc.*, 172 Idaho 251, 255, 531 P.3d 1148, 1152 (2023) (quoting *Clark v. Shari's Mgmt. Corp.*, 155 Idaho 576, 579, 314 P.3d 631, 634 (2013)). "The interpretation of a statute is a question of law over which this Court exercises *de novo* review." *Id*. (quoting *Kelly v. TRC Fabrication, LLC*, 168 Idaho 788, 791, 487 P.3d 723, 726 (2021)). "When doing so, this Court 'must liberally construe the provisions of the worker's compensation law in favor of the employee, in order to serve the humane purposes for which the law was promulgated.'" *Id*. (quoting *Clark*, 155 Idaho at 579, 314 P.3d at 634).

Furthermore, the Idaho Constitution expressly provides that "the legislature may provide conditions of appeal, scope of appeal, and procedure on appeal from orders of the public utilities commission and of the industrial accident board." Idaho Const. art. V, § 9. Acting on this power, the legislature provided that the Court has the power to "affirm or set aside" an order or award from the Commission on the following grounds:

9

(1) The commission's findings of fact are not based on any substantial competent evidence;

(2) The commission has acted without jurisdiction or in excess of its powers;

(3) The findings of fact, order or award were procured by fraud;

(4) The findings of fact do not as a matter of law support the order or award.

I.C. § 72-732. Relevant here, the Commission may exceed its powers if it misapplies its judicial rules. *See Fuentes v. Cavco Indus., Inc.*, 170 Idaho 432, 436–37, 511 P.3d 852, 856–57 (2022) (holding that the Commission acted in excess of its powers when it misapplied two JRPs when dismissing a claimant's case).

## III. ANALYSIS

### A. The dispute concerning Employer's unilateral exercise of Idaho Code section 72-434's dual enforcement mechanism is moot.

Coronado first contends that the Commission erred in denying her First Petition because it incorrectly determined that this Court's decision in *Arreola v. Scentsy, Inc.*, 172 Idaho 251, 531 P.3d 1148 (2023), only applied prospectively. Alternatively, Coronado contends that her "pretermination due process rights" "[p]reempt" *Brewer v. La Crosse Health & Rehab*, 138 Idaho 859, 71 P.3d 458 (2003), and Idaho Code section 72-434. In response, Employer argues that Coronado's appeal of the Commission's February 23, 2024, order is not properly before the Court because the order is not a final decision for purposes of Idaho Appellate Rule 11(d)(1). Employer further argues that the Commission's interpretation of *Arreola* is consistent with the Court's express directive that the decision applies only prospectively, and that Coronado is not "similarly situated to the" claimant in *Arreola*. We decline to address these arguments.

Coronado's First Petition challenged the propriety of Employer's unilateral discontinuation of benefits pursuant to Idaho Code section 72-434, based on Coronado's failure to attend the June 10, 2020, IME. The Commission denied the First Petition because, among other things, Coronado had "no actual controversy or direct interest in the issue of whether *Arreola* would apply to a past suspension of benefits." We agree.

A justiciable controversy is one that is "definite and concrete, touching the legal relations of parties having adverse legal interests." *Harris v. Cassia County*, 106 Idaho 513, 516, 681 P.2d 988, 991 (1984) (citation modified) (quoting *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240–41 (1937)). "It must be a real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be

upon a hypothetical state of facts." *Id.* (internal quotations omitted) (quoting *Aetna Life Ins.*, 300 U.S. at 241). It follows that a case is nonjusticiable when the issues it presents "are no longer live or the parties lack a legally cognizable interest in the outcome." *Frantz v. Osborn*, 167 Idaho 176, 180, 468 P.3d 306, 310 (2020) (citation omitted). When either is true, we consider the appeal moot and decline to decide, for the simple reason that there is no longer a "substantial controversy that is capable of being concluded through judicial decree of specific relief." *Fenn v. Noah*, 142 Idaho 775, 779, 133 P.3d 1240, 1244 (2006) (citation omitted).

We agree with the Commission that the controversy over Coronado's refusal to attend the June 10, 2020, IME is no longer a live one. To be sure, it once was. Coronado initially objected to Employer's unilateral scheduling of the exam on reasonableness grounds. *See* I.C. § 72-433(1) (requiring an employee to "submit himself for examination at reasonable times and places" for an independent medical examination). Employer, for its part, objected that Coronado's two-day notice of her intent not to attend was unreasonable. *See* I.C. § 72-434 (permitting execution of dual enforcement mechanism when "an injured employee unreasonably fails to submit to . . . an examination"). Indeed, the Claims Examiner went so far as to warn Coronado that her failure to attend the examination would "affect" her medical benefits. When Coronado failed to appear at the June 10 examination, Employer invoked section 72-434's dual enforcement mechanism— presumably suspending further compensation and Coronado's "right to take or prosecute any proceedings" under the WCL. But the Commission ultimately found that the Claims Examiner never followed through on this threat.

Nearly a year later, Employer's expert physician simply reviewed Coronado's medical records to determine her permanent partial impairment rating. Based on that rating, Employer issued checks totaling $10,806.50 to Coronado, which she refused. Furthermore, the Commission found that Coronado continued to receive her full salary benefits during the supposed suspension period. And, prior to the IME dispute, Employer paid medical benefits amounting to $49,660.60 related to Coronado's right hip surgery while Coronado proceeded with surgery to her left hip through her private medical insurance. Coronado, in turn, filed her own complaint seeking, among other things, to adjudicate benefits related to her alleged left hip injury, and Employer has made no effort to dismiss it. The only action Employer has taken is to seek dismissal of its own complaint,—a motion that remains stayed.

11

Whatever controversy once existed over Coronado's failure to attend the IME has been mooted. Coronado never lost benefits, nor did she lose access to the WCL's dispute-resolution process. To borrow the Commission's phrasing, "the suspension was a paper tiger." Accordingly, we decline to review the Commission's denial of Coronado's First Petition for want of a justiciable controversy.

### B. The Commission exceeded its powers by authorizing Employer to file a complaint against an injured worker.

Coronado filed her Second Petition—captioned "JRP 15 Petition for Declaratory Ruling on Employer's Complaint"—challenging Employer's complaint on grounds that it fell "outside the jurisdiction of the Idaho Industrial Commission granted in I.C. § 72-706 or violates form requirements." The Commission denied the Second Petition, reasoning it had jurisdiction to adjudicate an employer's complaint and proceed to hearing under Idaho Code sections 72-707 and -712. In the Commission's view, this conclusion finds additional support in "Idaho Supreme Court precedent, prior decisions of the Idaho Industrial Commission, the JRP rules, and policy behind the [WCL]." On appeal, Coronado maintains that the injured worker, and *only* the injured worker, has the right to file a complaint with the Commission. On that score, Coronado first argues the Commission lacks statutory authority to adjudicate Employer's complaint. Second, she argues that an employer's complaint "effectively deprives Coronado of her statutorily guaranteed statute of limitations" under section 72-706. Third, she argues that permitting employer complaints would violate the policies underlying the WCL. Fourth, she argues the Commission misapplied this Court's precedents to support its conclusion.

In response, Employer argues that this issue is moot because Coronado subsequently filed her own complaint and Employer moved to dismiss its complaint. Addressing the merits, Employer and Amicus argue that no provision of the WCL, including section 72-706, prohibits an employer or surety from filing a complaint with the Commission. They contend that the Commission has broad statutory authority to adjudicate a worker's eligibility for benefits under Idaho Code section 72-707 regardless of whether the complaint is filed by employer, surety, or injured employee. They further argue that allowing employers or sureties to file complaints is consistent with the Commission's Judicial Rules of Practice and Procedure and the policies underlying the WCL.

We start with Employer's justiciability argument. Coronado's Second Petition challenges the propriety of Employer's complaint, which would be moot only if the controversy no longer existed or "the parties lack[ed] a legally cognizable interest in the outcome." *Frantz v. Osborn*,

167 Idaho at 180, 468 P.3d at 310 (citation omitted). We do not agree that Employer's motion to dismiss its own complaint renders the issues presented therein moot. The Commission's referee informed the parties that proceedings, which encompassed the determination on Employer's motion to dismiss, were stayed pending the outcome of this appeal. Consequently, a live controversy remains regarding the propriety of that complaint, directly affecting Coronado's interests. Put simply, Employer's unresolved motion to dismiss its own complaint is insufficient to moot Coronado's Second Petition.

We now address the merits. Whether Employer may file a complaint with the Commission turns on the interpretation of Idaho Code sections 72-706, -707 and -712. Interpretation of these provisions of the WCL "is a question of law over which this Court exercises *de novo* review." *Arreola v. Scentsy, Inc.*, 172 Idaho 251, 255, 531 P.3d 1148, 1152 (2023) (quoting *Kelly v. TRC Fabrication, LLC*, 168 Idaho 788, 791, 487 P.3d 723, 726 (2021)). In construing the provisions at issue, we are guided by "[t]he lodestar of liberal construction of the Workmen's Compensation Law, requiring, if possible, the rehabilitation of injured employes [sic] and correct treatment of them." *Flock v. J.C. Palumbo Fruit Co.*, 63 Idaho 220, 242, 118 P.2d 707, 716 (1941) (citation modified). That means we will not read sections 72-706, -707 and -712 in isolation; rather, we will read them "in the context of the entire [A]ct." *Idaho State Ins. Fund v. Van Tine*, 132 Idaho 902, 909, 980 P.2d 566, 573 (1999) (quoting *Meisner v. Potlatch Corp.*, 131 Idaho 258, 262, 954 P.2d 676, 680 (1998)); *see Arreola*, 172 Idaho at 257–58, 531 P.3d at 1154–55 (citation omitted). Applying these principles, we conclude that the WCL does not authorize an employer to file a complaint for compensation or income benefits with the Commission.

The Commission adopted the JRP pursuant to the WCL. *See* I.C. § 72-508 ("[T]he commission shall have authority to promulgate and adopt reasonable rules and regulations involving judicial matters."). The JRP are intended to "apply in all disputed cases coming under the Commission's jurisdiction." JRP 1(A). Moreover, the JRP provide that "[a]ny party to a controversy may apply to the Commission for relief." *Id.* JRP 3 renames what section 72-706 refers to as "an application for hearing" as a "complaint." JRP 3(A)(1).

Employer relied on JRP 1 in filing its complaint in this matter. The Commission reasons that it may receive a "complaint" from an employer based on JRP 1(A)'s sweeping pronouncement that "any party" may seek relief from the Commission in "all disputed cases." However, that reading of JRP 1(A) is at odds with the WCL. *See Monroe v. Chapman*, 105 Idaho 269, 270, 668

13

P.2d 1000, 1001 (1983) (holding the Commission could adopt a rule permitting class action proceedings so long the rule is "reasonable" and "effect[s] the purposes of the [WCL]" (quoting I.C. § 72-508)). It is true that the Commission is empowered to determine "[a]ll questions arising under" the WCL. I.C. § 72-707. And it possesses "exclusive jurisdiction" to determine "all actions and claims which involve issues relating to a worker's injury . . . ." *Brooks v. Standard Fire Ins. Co.*, 117 Idaho 1066, 1069, 793 P.2d 1238, 1241 (1990) (citing I.C. § 72-201). But these provisions do not confer on an *employer* an unfettered right to move for a hearing by way of JRP 3's "complaint" device. The reasons for this are manifold.

Start with the overarching purpose of the WCL. The legislature enacted the WCL to provide "sure and certain relief for injured" workers. *Page v. McCain Foods, Inc.*, 141 Idaho 342, 344–45, 109 P.3d 1084, 1086–87 (2005) (quoting I.C. § 72-201). Consistent with that purpose, the WCL creates certain core remedies for employees alone, which it terms "compensation." *See* I.C. § 72-102(6); *Clover v. Crookham Co.*, 175 Idaho 48, ___, 561 P.3d 875, 881 (2024) ("Idaho's Worker's Compensation laws provide the exclusive remedy for employees against their employer for an injury arising from and in the course of employment." (citation modified)). That means the worker's compensation claim belongs to the employee. It is a right "personal to the injured employee, and proceedings to enforce that right are therefore ordinarily initiated by him." 8 Arthur Larson & Lex K. Larson, Larson's Workers' Compensation Law § 130.02 (Matthew Bender, rev. ed. 2024). If employers could unilaterally initiate the employee's claim by filing a complaint, they would usurp control over employees' compensatory rights under the WCL. In a world of employer-initiated complaints, relief under the WCL would be neither sure nor certain for the very people it was designed to serve. *See Page*, 141 Idaho at 346, 109 P.3d at 1088.

This conclusion is borne out in the WCL's operative provisions. Although Idaho Code section 72-706 is formally a statute of limitations, it expressly provides that a "claimant" pursuing compensation or income benefits under the WCL "shall have" between one and five years to "make and file with the commission an application requesting a hearing" to resolve such a claim. I.C. § 72-706(1)–(3). While the WCL does not define "claimant," the term "claim" is broadly defined to mean "filing for worker's compensation benefits through a Form 1A-1, First Report of Injury or Illness (FROI) or an application for hearing, referred to as a Complaint, with the Commission." IDAPA 17.01.01.010.09. Moreover, the WCL defines both compensation and income benefits as remedies exclusively available to employees. "Compensation" includes "any or all of the income

14

benefits and the medical and related benefits and medical services." I.C. § 72-102(6). "Income benefits" are "payments provided for or made under the provisions of this law to the injured employee disabled by an injury or occupational disease, or his dependents in case of death, excluding medical and related benefits." I.C. § 72-102(15). Because these benefits are remedies only an injured employee would seek, the term "claimant" in section 72-706 necessarily refers to the employee who holds the entitlement to these remedies. Accordingly, only an employee may file an application requesting a hearing on a claim relating to compensation or income benefits as described in section 72-706; an employer has no independent right to do so.

We disagree with the Commission's determination that, because Idaho Code section 72-706 is titled as a statute of limitations, its effect should be limited to that purpose alone. Indeed, the Commission went so far as to declare that section 72-706's "plain language does not authorize anyone, even a worker, to file a complaint." We are at a loss to understand what "plain language" the Commission read to reach that conclusion. Section 72-706 explicitly provides that a *claimant* may "make and file with the commission an application requesting a hearing" when the claim relates to compensation or income benefits. The Commission may not ignore this unambiguous directive simply because the statute's title addresses its limitations function. Instead, we hold that section 72-706 provides that *only* the claimant-employee may make and file with the Commission an application requesting a hearing when the underlying claim relates to unpaid or discontinued compensation or income benefits.

Employer and Amicus ignore section 72-706's place in the statutory scheme. They first point to Idaho Code section 72-707 to bolster their argument that the Commission may entertain employer complaints. Section 72-707 provides that "[a]ll questions arising under" the WCL "shall be determined by the [C]ommission." I.C. § 72-707. In prior cases, we have recognized that, while section 72-707 confers subject matter jurisdiction, it does not speak to how, and by whom, particular issues are presented to the Commission. *See Monroe*, 105 Idaho at 270, 668 P.2d at 1001 ("However broad, subject matter jurisdiction does not mandate that specific procedural devices be available or employed."). The Commission may have the right to exercise its quasi-judicial power over the class of claims raised by an employer but that says nothing about the propriety of the *employer* initiating those claims as a procedural matter. *Cf. Allen v. Campbell*, 169 Idaho 613, 617, 499 P.3d 1103, 1107 (2021) ("Subject matter jurisdiction concerns only the inherent authority of the court to exercise judicial power . . . ." (citing *Sierra Life Ins. Co. v. Granata*, 99 Idaho 624,

628, 586 P.2d 1068, 1072 (1978))). For that reason, section 72-707 cannot be read to authorize employer complaints.

Employer and Amicus next rely on Idaho Code section 72-712's broad pronouncement that "any party to the proceeding" may apply to the Commission for a hearing "for the purpose of determining the issues." Once again, support for the proposition that the WCL permits employer complaints could be found in section 72-712 if read in isolation. But we do not read provisions of the WCL in isolation. In this instance, section 72-712's general hearing provision is undercut by the more specific hearing provisions outlined in Idaho Code section 72-706. Section 72-712 supplies the general rule that "any party" may seek a hearing before the Commission to "determin[e] the issues." I.C. § 72-712. However, section 72-706 applies a more specific rule: if an employer or surety does not pay compensation, discontinues compensation, or discontinues income benefits, only the claimant-employee may "make and file with the commission an application requesting a hearing" to request adjudication of those issues. I.C. § 72-706(1)–(3). As the narrower rule, we read section 72-706 as an exception to 72-712's general hearing right. Employer and Amicus would let the general provision in section 72-712 swallow the more specific rule in section 72-706. We reject their attempt to do so. Their reading does not merely misconstrue section 72-706; it distorts the purpose of the WCL as a whole, stripping employees of the very control over their worker's compensation claim that the WCL aims to guarantee.

The substance of Employer's November 16, 2023, complaint plainly implicated Coronado's compensatory rights under the WCL. Through its application, Employer sought to adjudicate, among other things, the date of Coronado's medical stability, her entitlement to medical, PPI, PPD, and TTD/TPD benefits, and the cause of her left hip condition and need for surgery. Section 72-706 provides the only procedural pathway for a party to adjudicate these compensatory rights before the Commission. I.C. § 72-706(1)–(3). It provides that an employee "shall have" the right to request a hearing on unpaid or discontinued compensation benefits or discontinued income benefits, subject to its limitations period. *Id.* Nothing in the WCL authorizes an employer to displace that right or compel the employee to litigate her claim defensively. To permit employers this authority would undercut the "sure and certain relief" that is the WCL's very cornerstone. *See Page*, 141 Idaho at 346, 109 P.3d at 1088.

Despite Employer's and Amicus' contentions to the contrary, our precedent aligns with this conclusion. True, in a series of cases this Court has seemed to condone employers moving for

16

a hearing before the Commission to resolve matters arising in a worker's compensation claim. *See,*
*e.g.*, *Arreola*, 172 Idaho at 262, 531 P.3d at 1159 (medical exam dispute); *Brooks*, 117 Idaho at
1070, 793 P.2d at 1242 (claim for reimbursement and contribution between sureties); *Basin Land*
*Irrigation Co. v. Hat Butte Canal Co.*, 114 Idaho 121, 123, 754 P.2d 434, 436 (1988) (existence
of employer/employee relationship); *Williams v. Blue Cross of Idaho*, 151 Idaho 515, 518, 260
P.3d 1186, 1189 (2011) (whether medical insurer was subrogee or creditor). But with the exception
of *Arreola*, those cases addressed the Commission's jurisdiction over the subject matter, not the
procedural question of who may initially invoke it. More importantly, we have generally held that
an employer may file a complaint to adjudicate a claimant's rights when compensation is unpaid,
discontinued, or when income benefits are cut off. In those instances, Idaho Code section 72-706
bestows on employees the exclusive right to move for a hearing.

We are aware of only one case holding otherwise. In *Lockard v. St. Maries Lumber Co.*,
this Court held that an employer and the employer's surety may initiate proceedings to adjudicate
questions concerning a prospective claimant's entitlement to compensation under the pre-1971
version of the WCL. 75 Idaho 497, 274 P.2d 995 (1954). There, an employee of the employer
lumber company was injured on the job. *Id.* at 498, 274 P.2d at 996. The employer filed notice of
the injury with the Commission; however, the employee, a minor, did not file a claim for
compensation. *Id.* Instead, he instituted an unspecified action in federal court. *Id.* at 499, 274 P.2d
at 996. Thereafter, the employer, and the employer's surety, filed an "application for hearing and
award to [the employee]" with the Commission. *Id.* The employee objected in special appearance,
"challenging the [Commission's] jurisdiction to hear or award, because no claim had been filed by
[the employee] or on his behalf." *Id.* The Commission agreed with the employee, and the employer
appealed. *Id.*

This Court reversed the Commission's decision. The Court began its analysis by
interpreting Idaho Code section 72-603, the precursor to Idaho Code section 72-712. *Id.*; *compare*
I.C. § 72-603 (1954) ("If the compensation is not settled by agreement, the board may, upon its
own motion, or upon the application of any party to the proceedings, hear the matter or assign it
for hearing by a member of the board."), *with* I.C. § 72-712 (2023) ("Upon application of any party
to the proceeding, or when ordered by the commission or a member thereof or a hearing officer,
referee or examiner, and when issues in a case cannot be resolved by pre-hearing conferences or
otherwise, a hearing shall be held for the purpose of determining the issues."). Adopting other state

supreme courts' interpretations of a similar statute, the Court held that, where the parties fail to agree on questions of compensation and an employee has not made a claim, the employer is permitted to institute a proceeding to secure a determination of the employee's right to compensation. *Lockard*, 75 Idaho at 500, 274 P.2d at 997 (first citing *Burt v. Brigham*, 117 Mass. 307, 308 (1875); then citing *Young v. Duncan* (*In re Young*), 106 N.E. 1, 4–5 (Mass. 1914); then citing *Miss. River Power Co. v. Indus. Comm'n*, 124 N.E. 552, 555 (Ill. 1919); and then citing *Nat'l Zinc Co. v. Indus. Comm'n*, 127 N.E. 135, 136 (Ill. 1920)).

Next, the Court analyzed Idaho Code section 72-601, a precursor to Idaho Code section 72-708. *Id.*; *compare* I.C. § 72-601 (1950) ("Process and procedure under this act shall be as summary and simple as reasonably may be and as far as possible in accordance with the rules of equity."), *with* I.C. § 72-708 (2023) ("Process and procedure under this law shall be as summary and simple as reasonably may be and as far as possible in accordance with the rules of equity."). The Court explained that its conclusion was "buttressed by" Idaho Code section 72-601 because "equity" was made "applicable." *Lockard*, 75 Idaho at 500, 274 P.2d at 997. The Court explained that "[i]n equity, suits may be brought by a potential debtor to implead and determine the rights of possible creditors and end a contingent contest." *Id.*

In any event, our holding in *Lockard* lost its force upon the legislature's enactment of Idaho Code section 72-706, Act of Mar. 16, 1971, ch. 124, § 3, 1971 Idaho Sess. Laws 422, 476, which carved out an exception to section 72-712's general hearing right. Whatever rationale we devised in *Lockard* for permitting employer complaints implicating an employee's core compensatory rights—grounded in section 72-712's broad rule and the vague equitable principles endorsed by section 72-708—must yield to section 72-706's specific command: only employees may apply to the Commission for a hearing when the claim concerns unpaid or discontinued compensation benefits or discontinued income benefits.

We hold that the Commission is not authorized to entertain an employer's making or filing of an application for a hearing (i.e., complaint) to adjudicate an employee's claims to unpaid or discontinued compensation benefits or discontinued income benefits. Section 72-706 allows only employees to so move. This holding is consistent with the purpose of the WCL to provide sure and certain relief to injured employees. At the same time, we do not mean to suggest that the Commission may not entertain other disputes arising under the WCL on the motion of an employer or third party. Sections 72-508 and -712 provide the Commission with ample authority to design

18

procedures to meet that purpose. However, whatever rules the Commission adopts must abide by the basic principle reflected in section 72-706 and the policy of the WCL more generally: that the injured worker is "the master" of her claim "and therefore controls much about her suit." *Cf. Royal Canin U.S.A., Inc. v. Wullschleger*, 604 U.S. 22, 35 (2025) (holding that a plaintiff in an action removed to federal court may amend the complaint to delete the federal-law claims even if doing so deprives the court of subject-matter jurisdiction).

## C. Attorney Fees

Coronado seeks an award of attorney fees and costs on appeal and the proceedings below under Idaho Code section 72-804, which provides:

> If the commission or any court before whom any proceedings are brought under this law determines that the employer or his surety contested a claim for compensation made by an injured employee or dependent of a deceased employee without reasonable ground, or that an employer or his surety neglected or refused within a reasonable time after receipt of a written claim for compensation to pay to the injured employee or his dependents the compensation provided by law, or without reasonable grounds discontinued payment of compensation as provided by law justly due and owing to the employee or his dependents, the employer shall pay reasonable attorney fees in addition to the compensation provided by this law. In all such cases the fees of attorneys employed by injured employees or their dependents shall be fixed by the commission.

I.C. § 72-804. "The statute . . . is a remedial statute that authorizes an award of attorney fees where 'the employer or his surety contested a claim for compensation made by an injured employee . . . without reasonable ground . . . .'" *McGivney v. Aerocet, Inc.*, 165 Idaho 227, 237, 443 P.3d 241, 251 (2019) (alterations in original) (quoting I.C. § 72-804). Coronado is not entitled to attorney fees under section 72-804 for two reasons. First, Coronado only filed a claim for compensation *after* the notice of appeal was filed in this case. Second, Employer has made, or attempted to make, all payments for which its liability was established. What is more, because each party has prevailed in part, we decline to award costs. *See* I.A.R. 40(a).

Employer requests attorney fees "as a sanction pursuant to Idaho Appellate Rule 11.2(a) and the Court's inherent powers to maintain dignity and integrity of proceedings while achieving the orderly and expeditious disposition of cases." While we affirmed the dismissal of Coronado's First Petition on mootness grounds, we are not persuaded that appeal of that order violated Rule 11.2. Moreover, Coronado's appeal from the denial of her Second Petition was warranted by existing law. We therefore decline to award sanctions.

19

#### IV. CONCLUSION

Based on the foregoing reasons and authorities, the Commission's order denying Coronado's First Petition is affirmed. However, the Commission's order denying Coronado's Second Petition is set aside because the Commission "acted . . . in excess of its powers[.]" I.C. § 72-732(2).

Chief Justice BEVAN, and Justices MOELLER, ZAHN and MEYER CONCUR.